**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Alberto DE LA FUENTE,**
**Defendant–Appellee.**

No. 92–10719.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 12, 1993.

Decided Oct. 27, 1993.

Karon V. Johnson, Asst. U.S. Atty., Agana, Guam, for plaintiff-appellant.

George E. Brooks, San Diego, CA, for defendant-appellee.

Before: REINHARDT and LEAVY, Circuit Judges, and MERHIGE,* District Judge.

REINHARDT, Circuit Judge:

The United States appeals the granting of defendant's motion to correct his sentence. Because we hold that the district court correctly concluded that the government breached its plea agreement with the defendant by failing to request, on the basis of substantial assistance, a sentence below the statutory mandatory minimum, we affirm.

## I

Alberto De la Fuente was arrested at the Guam Airport on November 4, 1989 in possession of 740 grams of cocaine. De la Fuente, a resident of California, was transporting the cocaine for his cousin, Roman Fernandez. The government charged De la Fuente with one count of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1).

On November 15, 1989, De la Fuente pleaded guilty under an agreement with the government. He agreed to cooperate with the government by providing information about and testifying against Fernandez. In exchange, the government agreed to make his cooperation known to the court at sentencing, and "to recommend to the sentencing court that defendant be sentenced to the minimum period of incarceration required by the sentencing guidelines." The signed plea agreement notes that the maximum sentence for the charged offense is 40 years and that the statutory minimum is five years. The agreement also stipulates that De la Fuente has no prior criminal convictions.

De la Fuente was sentenced on March 2, 1990. The probation office calculated an offense level of 22 based on a two-level downward adjustment for minor role (USSG § 3B1.2(b)) and a two-level downward adjustment for acceptance of responsibility (USSG § 3E1.1(a)) from a base level of 26 (USSG § 2D1.1(c)(9)). Offense level 22 and a criminal history category of I yields a sentencing range of 41–51 months. However, because the government refused to move under 18 U.S.C. § 3553(e) for a sentence below the statutory minimum,[1] Judge Duenas sentenced De la Fuente to five years' imprisonment. *See* 21 U.S.C. § 841(b)(1)(B); USSG § 5G1.1(b). The government attorney stated at the sentencing hearing that "[o]ur office does not deviate from the statutory minimum ... [w]e do not recommend deviations outside of the minimum." The government therefore recommended the five-year sentence.

On March 24, 1992, De la Fuente, by new counsel, moved under 28 U.S.C. § 2255 to vacate his conviction or to correct his sentence on four grounds: 1) government breach of the plea agreement by failing to make his cooperation known at sentencing[2];

---

* Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

1. Section 3553(e) provides the district court with authority, on government motion, to sentence a defendant below the statutory minimum "to re-flect a defendant's substantial assistance in the investigation or prosecution of another person."

2. The government concedes that it breached the plea agreement by not informing the district court at sentencing of De la Fuente's cooperation. Nonetheless, the government correctly ar-

2) government breach by failing to move for a sentence below the statutory minimum; 3) invalidity of the agreement because there was no consideration offered by the government; and 4) ineffective assistance of counsel.

The district court concluded that De la Fuente could pursue his § 2255 remedy because the court failed to advise him of his right to appeal his sentence at the sentencing hearing on March 2, 1990. After briefing and oral argument by the parties, the district court, finding that the prosecution had breached the plea agreement, ordered the government to show cause why the court should not order specific performance of the agreement and resentence De la Fuente. On November 25, 1992, the district court, concluding that the government's continuous refusal to recommend departure was in bad faith, corrected De la Fuente's sentence to 41 months' imprisonment, the sentence that the court concluded the parties had in mind when they reached their plea agreement. The government appeals.

## II

■ Several months prior to its decision correcting De la Fuente's sentence, the district court, citing *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), sua sponte ordered De la Fuente to demonstrate "cause and prejudice" for his

failure to raise his objections previously, either at sentencing or on direct appeal.[3] The government argues that the district court erred in ultimately concluding that De la Fuente satisfied the *Frady* inquiry.

■ Initially, we note that it is by no means clear that *Frady*'s "cause and prejudice" requirement applies to claims of government breach of an executed plea agreement. Such a breach implicates the constitutional guarantee of due process. *See Mabry v. Johnson*, 467 U.S. 504, 509–10, 104 S.Ct. 2543, 2547–48, 81 L.Ed.2d 437 (1984); *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). As we noted in *United States v. Spawr Optical Research, Inc.*, 864 F.2d 1467, 1471 (9th Cir.1988), *certs. denied*, 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989) *and* — U.S. —, 113 S.Ct. 2348, 124 L.Ed.2d 258 (1993), the Supreme Court has never held that the *Frady* test applies to *every* claim of constitutional error, but has only applied the test to claims running afoul of an express statutory waiver provision.[4] Thus, under the Court's precedent, some constitutional claims may remain that do not require a showing of "cause and prejudice" to allow collateral review. *Id.* Consistent with this more restrictive scope for *Frady* and directly pertinent to the type of claim involved here is *United States v. Benchimol*, 471 U.S. 453, 105 S.Ct. 2103, 85 L.Ed.2d 462 (1985), decided three years after

gues that this breach standing alone was harmless because generally a court may not sentence a defendant to a term below the statutory minimum on any basis other than a government substantial-assistance motion. *See United States v. Vilchez*, 967 F.2d 1351, 1355–56 (9th Cir. 1992); *United States v. Sharp*, 883 F.2d 829, 831 (9th Cir.1989). In effect, as often happens in federal prosecutions of first-time drug offenders, the statutory minimum stripped the district court of virtually all sentencing discretion. By itself, information about De la Fuente's cooperation could not justify a sentence below five years. Thus, the key issue on appeal is whether the plea agreement *required* the government to *move* for a below-minimum sentence on the basis of De la Fuente's cooperation.

3. Several different judges handled this case in the district court. The original sentencing of De la Fuente, the issuance of the *Frady* order to show cause, and the granting of the § 2255 motion were each handled by a different judge.

4. Citing our decision in *United States v. Flores–Payon*, 942 F.2d 556 (9th Cir.1991), the government argues that a claim of government breach of a plea agreement is waived by failure to object at sentencing. *Flores–Payon*, in which the defendant initially raised his claim before the court of appeals, is a straightforward application of "the general rule against review on appeal of issues not raised below." *Id.* at 558. *Flores–Payon* does *not* address the appropriateness of collateral review, in which the district court, the traditional locus for resolution of factual disputes, has the first opportunity to pass on the claim. *Cf. id.* at 559 (distinguishing cases in which district court "had an opportunity to develop a record following the defendant's claim of breach, either in the original proceeding or on collateral review"). Thus, *Flores–Payon* does not render claims of plea-agreement breach comparable to other constitutional claims, subject to *express statutory* waiver provisions, for purposes of *Frady* and collateral review.

*Frady.* Even though Benchimol never raised the plea-breach issue at his sentencing or on appeal, in *Benchimol,* the Court rejected his section 2255 claim of government breach *on the merits,* never suggesting that the "cause and prejudice" test applied.[5]

■ In any event, we need not decide whether *Frady* generally applies to claims of government breach of an executed plea agreement. We conclude that, even assuming that the test applies, De la Fuente adequately demonstrates "cause and prejudice." Ineffective assistance of counsel constitutes "cause" for failure to raise a challenge prior to section 2255 collateral review. *See Baumann v. United States,* 692 F.2d 565, 572 (9th Cir.1982); *cf. Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) (ineffective assistance is "cause" for procedural default under section 2254 habeas review). There is no dispute as to what counsel did at sentencing, and no conceivable tactical or strategic reason for his failure to raise the plea-breach issue. We therefore reach our own judgment as to counsel's ineffectiveness. *See Doyle v. United States,* 721 F.2d 1195, 1198–99 (9th Cir.

1983) (deferring to district court findings of what counsel did, but exercising own judgment as to whether counsel ineffective). We have no difficulty in concluding that counsel's failure to bring the plea-breach claim to the district court's attention at sentencing constituted ineffective assistance.[6]

As to the *Frady* "prejudice" requirement, as explained below, the outcome of De la Fuente's sentencing would have been different had the plea-breach claim been raised. Reserving the question whether the test properly applies to claims of government breach of an executed plea agreement, we conclude that De la Fuente satisfies the *Frady* "cause and prejudice" test.

### III

■ "Plea agreements are contractual in nature and are measured by contract law standards." *United States v. Keller,* 902 F.2d 1391, 1393 (9th Cir.1990). In construing an agreement, the court must determine what the defendant[7] reasonably understood to be the terms of the agreement when he pleaded guilty.[8] *See United States v.*

5. Indeed, the *Benchimol* majority opinion makes a passing reference to a pre-*Frady* case governing the appropriateness of section 2255 relief, and the concurrence cites three such cases. *See* 471 U.S. at 456–57, 105 S.Ct. at 2105–06 (*citing Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)); *see also id.,* 471 U.S. at 457, 105 S.Ct. at 2105 (Stevens, J., concurring).

6. As noted above, the district court failed to advise De la Fuente of his right to appeal his sentence. This independently excuses De la Fuente's failure to directly appeal his sentence on the basis of the government's plea breach. Moreover, under *Flores–Payon,* 942 F.2d at 558–60, his counsel's failure to raise the issue at sentencing would likely have precluded relief on direct appeal in any event. Thus, ineffectiveness of counsel constitutes "cause" for De la Fuente's failure to raise the issue both at sentencing and on direct appeal.

7. We have sometimes stated that it is the reasonable understanding of the *parties* that determines the meaning of disputed terms. *See, e.g., United States v. Gerace,* 997 F.2d 1293, 1294 (9th Cir. 1993); *Keller,* 902 F.2d at 1393. As a practical matter, because we employ *objective* standards— it is the parties' or defendant's *reasonable* beliefs that control—the difference between stating that the defendant's or the parties' beliefs control is

minimal. The construction we adopt, however, incorporates the general rule that ambiguities are construed in favor of the defendant. Focusing on the *defendant's* reasonable understanding also reflects the proper constitutional focus on what induced the *defendant* to plead guilty. *See generally Mabry,* 467 U.S. at 507–11, 104 S.Ct. at 2546–48.

8. The government argues that the defendant's understanding at the time of sentencing, rather than when he pleaded guilty, should control. To the extent this contention differs from the waiver argument rejected above, *see supra* note 4, it is unconvincing. First, several of our cases have held that it is the defendant's understanding *at the time of the plea* that controls. *See, e.g., United States v. Anderson,* 970 F.2d 602, 607 (1992), *amended,* 990 F.2d 1163 (9th Cir.1993); *United States v. Packwood,* 848 F.2d 1009, 1011 (9th Cir.1988); *United States v. Quan,* 789 F.2d 711, 713 (9th Cir.1986). We are not free to disregard this controlling precedent. Moreover, under general principles of contract law, it would be bizarre to look to the time of final performance rather than to the time of contract formation in construing the parties' intent. *Cf. United States v. Floyd,* 1 F.3d 867, 870–71 (9th Cir.1993) (applying general contract-law principles to preclude reliance on post-agreement acknowledgment signed prior to sentencing in construing

*Anderson,* 970 F.2d 602, 607 (1992), *amended,* 990 F.2d 1163 (9th Cir.1993); *United States v. Packwood,* 848 F.2d 1009, 1011 (9th Cir.1988). As with other contracts, provisions of plea agreements are occasionally ambiguous; the government "ordinarily must bear responsibility for any lack of clarity." *Id.; cf. United States v. Read,* 778 F.2d 1437, 1441 (9th Cir.1985) ("responsible public servant who recognizes the desirability of clarity in agreements would avoid ... use" of vague language in plea agreements), *cert. denied,* 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986). Construing ambiguities in favor of the defendant makes sense in light of the parties' respective bargaining power and expertise.

■ Here, the district court correctly held that De la Fuente's plea agreement was "ambiguous at best." On its face, the disputed provision is susceptible of both De la Fuente's and the government's proffered interpretations. The government points out that section 5G1.1(b) of the guidelines provides that where a statutory minimum sentence is greater than the maximum of the applicable range, the statutory minimum "shall be the guideline sentence." The government argues that because the guidelines, through section 5G1.1(b), incorporate statutory minima, the reference in the plea agreement to the "minimum period of incarceration required by the sentencing guidelines" similarly includes the applicable statutory minimum. Thus, all the government promised to recommend was the lowest—and only—guideline sentence allowed by application of section 5G1.1(b): the five-year statutory minimum. This is a plausible, albeit somewhat legalistic, reading of the disputed provision.

De la Fuente's interpretation is equally plausible. The disputed "minimum period ... required by the sentencing guidelines" implies that there is some sentencing discre-

tion to which the government's recommendation would apply—some range of possible sentences to choose from, rather than the mechanistic imposition of the statutory minimum sentence. A common-sense reading of the agreement thus suggests that, as ordinarily occurs under the guidelines, a sentencing *range* would be calculated, and the prosecution would recommend the low point in the range. Under this interpretation of the disputed provision, the government would take whatever steps necessary to meaningfully recommend the minimum period in the range—including a substantial-assistance departure motion if the range lay below the statutory minimum.

Ultimately, the parties' dispute centers around the scope of the term "sentencing guidelines" as used in the plea-agreement provision under examination. If the defendant reasonably understood that term to include only the portions of the guidelines relating to calculation of a sentencing range, De la Fuente's proffered interpretation should prevail. On the other hand, if the defendant could only reasonably have understood the term "sentencing guidelines" to include section 5G1.1(b) as well as the range calculation provisions, we would be required to adopt the government's reading. The latter might be characterized as the more technical reading and the former as the interpretation more in accord with ordinary language.

However, we note that De la Fuente also prevails under a reading of the term "sentencing guidelines" that is even more "technical" than the one urged by the government. If the term incorporates all portions of the guidelines, including *departure* provisions, then the minimum term *required* by the sentencing guidelines would appear to be both below the statutory minimum and possibly even below the 41-month sentence De la Fuente actually received.[9] *See* USSG

---

plea agreement). De la Fuente's acquiescence at sentencing also cannot constitute a valid modification because the court did not engage in any of the colloquy ordinarily conducted under Fed. R.Crim.P. 11. *See id.* at 870. In any event, the fact that, out of a sense of futility or despair, the defendant failed to protest the government's refusal at sentencing to honor its agreement should

not be held against him in interpreting the plea accord.

**9.** This interpretation comports with De la Fuente's claim that he believed the agreement required a sentence even lower than 41 months. We need not decide if the plea agreement required the government to recommend a sentence

§ 5K1.1 (allowing departures for substantial assistance to authorities); *id.* application note 1 (referencing 18 U.S.C. § 3553(e) and sentences below statutory minimum). Because the guidelines allow departures, they only strictly *require* the lowest departure sentence—the term of imprisonment below which the sentencing court may not properly depart further.

Ultimately, because the agreement fails to specifically address the possibility of a substantial-assistance departure motion, each party's proffered interpretation is neither clearly supported by the language of the agreement nor "necessarily inconsistent with it either." *Anderson,* 970 F.2d at 606. However, we need not rely on the rule construing ambiguities against the government. Neither need we rest on our traditional deference to the district court's interpretation of a plea agreement. *See, e.g., Read,* 778 F.2d at 1441 (district court findings as to terms of plea agreement "reviewed only for clear error"). There is a separate, persuasive reason to reject the government's proffered interpretation and to affirm the district court.

The district court found that "[t]he record is clear that Petitioner cooperated but received nothing for his cooperation." We agree, and we further conclude that the parties knew or should have known, at the time the agreement was reached, of this probable outcome of the government's proffered interpretation of the disputed sentence-recommendation provision. Therefore, in order to conclude that the government's interpretation is correct—that it reflects the defendant's reasonable understanding at the time he entered his plea—we would have to decide that the parties entered into a contract with no consideration offered in exchange for De la Fuente's assistance in obtaining evidence against his cousin.

At the time the parties reached their agreement, all variables affecting sentencing were known to the government and De la Fuente. Because the agreement stipulates that De la Fuente had no prior convictions, the parties knew or should have known that he would fall within Criminal History Category I with zero criminal history points. *See* USSG § 4A1.1. The parties also knew or should have known that the base offense level for the quantity of drugs involved is 26. Also, the government admitted at oral argument that De la Fuente cooperated with the authorities from the time he was arrested. By pleading guilty—with or without an agreement to further cooperate with the government—he would necessarily receive a two-level downward adjustment for acceptance of responsibility. *See* USSG § 3E1.1(a) and application note 1.

Finally, we conclude that the possibility of a two-level downward adjustment for being a "minor participant" was reasonably foreseeable. *See* USSG § 3B1.2(b). The government contends that this last adjustment was not expected.[10] However, De la Fuente was apparently a one-time courier of drugs for his cousin; the government has never suggested that he had a larger role in the drug smuggling activity. While the quantity of drugs involved may reasonably have led the parties to discount the possibility of a four-level "minimal" participant adjustment, the possibility of a two-level adjustment for a mere courier like De la Fuente should have been reasonably foreseeable. *Cf. United States v. Webster,* 996 F.2d 209, 212 n. 5 (9th Cir.1993) (noting that precedent holds that drug amount may foreclose minimal participant adjustment but not minor participant adjustment). After all, the "minor participant" adjustment is available to "any participant who is less culpable than most other participants, but whose role could not be

below 41 months because De la Fuente has not appealed the district court's decision to resentence him to that period of incarceration.

**10.** Even if, as the government urges, the "minor participant" adjustment were entirely unforeseeable, the parties knew or should have known that De la Fuente's offense level would be 24, yielding a range of 51–63 months. If the parties did not envision a government motion to allow a below-

minimum sentence, the operative range would be 60–63 months. It seems unlikely that De la Fuente would agree to try to develop evidence against a family member in exchange for a possible reduction of a five-year plus sentence by a mere three months. Thus, even under the government's theory, we would be inclined to favor De la Fuente's interpretation.

described as minimal." USSG § 3B1.2 application note 3.

Thus, the strong possibility—becoming, upon De la Fuente's sentencing, an actuality—that De la Fuente's offense level would be a 22 was reasonably foreseeable at the time the parties reached their plea agreement. Given their knowledge of the lack of any criminal history, the parties should have been aware that De la Fuente's guideline sentencing range of 41–51 months would lie *entirely below* the statutory minimum of 60 months. By providing for a sentencing recommendation in this circumstance, the parties must surely have envisioned a sentence below the statutory minimum. Otherwise, the provision would have served no purpose. The sentence would be the same with or without a government recommendation; either way, it would necessarily be for the statutory minimum of five years.

More important, had the parties reasonably understood the plea agreement to mean what the government now urges, no consideration would have supported De la Fuente's promise to cooperate in the investigation of his cousin. None of the adjustments resulting in the sentencing range of 41–51 months depended upon any action by the government. Therefore, De la Fuente could have received the same calculated sentencing range and consequent 60–month sentence simply by pleading guilty, without agreeing to cooperate further with the government. If the government's proffered interpretation of the disputed agreement provision is correct, the government promised *nothing* to De la Fuente for his agreement to cooperate.

We are unwilling to impute to the government the level of cynicism and bad faith implicit in negotiating an agreement under which it persuaded a defendant to help convict his relative by offering what appeared to be a reduced sentence but in fact offered him no benefit. Even if we believed that the government *in fact* acted in such an unfair manner in this case,[11] we would decline to

acknowledge and reward such conduct in light of the high standard of fair dealing we expect from prosecutors. *See United States v. Kojayan,* 8 F.3d 1315, 1323 (9th Cir.1993) ("lawyers representing the government in criminal cases serve truth and justice first").

De la Fuente could not have reasonably understood the terms of the plea agreement to offer nothing in exchange for his cooperation; neither, we hope, could the government have entertained such an understanding. The district court correctly concluded that the plea agreement required the government to move for a sentence below the statutory minimum.

### IV

We need not linger over the government's meritless contention that the district court lacked authority to enter a substantial-assistance departure even after it determined that the plea agreement required the recommendation of a below-minimum sentence. It is true that a government substantial-assistance motion is generally a prerequisite to such departures, and that a district court is "presumptively without power to circumvent the mandatory minimum" absent a government motion. *United States v. Vilchez,* 967 F.2d 1351, 1355 (9th Cir.1992). However, as the government concedes, its discretionary power to file a substantial-assistance motion "is subject to constitutional limitations that district courts can enforce." *Wade v. United States,* —— U.S. ——, ——, 112 S.Ct. 1840, 1843, 118 L.Ed.2d 524 (1992).

It should be obvious that among these constitutional limitations is the due process requirement that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, ... such promise must be fulfilled." *Santobello,* 404 U.S. at 262, 92 S.Ct. at 499. The court's power to order specific performance of a plea agreement is well-established.[12] *See id.* In *Wade,*

---

11. We note that, at oral argument, the government conceded that De la Fuente in effect got nothing for his cooperation.

12. "Well-established" to all but the government, apparently. The government's suggestion that withdrawal of his plea and going to trial is De la Fuente's only remedy, long after he has complied with his side of the plea agreement by cooperat-

the Supreme Court implicitly acknowledged that enforcing the terms of a plea agreement overrides the requirement of a government substantial-assistance motion by noting that Wade made no claim "that the condition is superseded in this case by any agreement on the Government's behalf to file a substantial-assistance motion." *Wade*, ––– U.S. at –––, 112 S.Ct. at 1843; *see also United States v. Delgado–Cardenas*, 974 F.2d 123, 125 (9th Cir.1992) (similarly pointing out that case involves no government promise to move for departure).

Furthermore, under the rule established in *Wade*, the district court may order relief "if the prosecutor's refusal to move was not rationally related to any legitimate Government end." *Wade*, ––– U.S. at –––, 112 S.Ct. at 1844. Breaching the terms of a plea agreement—and, in doing so, violating the due process requirement established in *Santobello*—is not a *legitimate* governmental purpose. When the government persists in its refusal to make a substantial-assistance motion, the district court may remedy the breach of an executed plea agreement by sentencing the defendant below the statutory minimum.[13]

### V

Because we conclude that the only reasonable interpretation of De la Fuente's plea agreement, in light of what the parties knew or should have known, required the government to move for a below-minimum sentence and to recommend the minimum in his guideline range, we affirm the district court's resentencing of De la Fuente to 41 months' imprisonment.

---

ing in the criminal investigation of his cousin, can only be characterized as exceedingly disingenuous.

**13.** We note our similar conclusion in the related context of downward departure from the *guidelines* range on the basis of cooperation with the government. *See* USSG § 5K1.1. Such departures, like the below-minimum sentence involved here, generally require a discretionary—subject to the constraints of due process—government substantial-assistance motion. In *United States v. Goroza*, 941 F.2d 905, 909 (9th Cir.1991), we cited *Santobello* and stated that specific performance of a plea agreement requiring the government to file a motion for downward departure would be appropriate. Although we ultimately concluded that the plea agreement in question did not include any promise for a substantial-assistance motion, we had no hesitation in stating the general principle that the district court could order specific performance where such a promise has been made.