87 F.3d 1323
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ricardo BARRAZA, Defendant-Appellant.
 No. 95-50450.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 3, 1996.*
Decided June 18, 1996.
 
 Before: WIGGINS, THOMPSON, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Ricardo Barraza appeals the district court's denial of his motion to dismiss all counts of the indictment charging him with numerous drug-related offenses. In a prior case in the Southern District of California (No. 94-1074-R), Barraza pled guilty to aiding and abetting the possession with intent to distribute 1,500 pounds of marijuana. In exchange, the government agreed "not to charge [Barraza] with any other drug offense in connection with the 1500 pounds of marijuana in this case."
 
 
 3
 Barraza moved to dismiss the indictment in the instant case as barred by this provision of the plea agreement. He argues that, because the 1,500 pounds of marijuana were part of the larger drug smuggling conspiracy charged in the indictment, the plea agreement bars charging him with any drug offense involved in the conspiracy. We have jurisdiction over this timely appeal under 28 U.S.C. § 1291 and we affirm.
 
 FACTS AND PRIOR PROCEEDINGS
 
 4
 The relevant facts are as follows. On January 20, 1994, in the Southern District of California, Barraza and two co-defendants were indicted with one count of possession of approximately 1,500 pounds of marijuana with intent to distribute and aiding and abetting.[1] On June 20, 1994, Barraza pled guilty to the offense pursuant to a written plea agreement.[2] Barraza acknowledged the following acts as the factual basis for the plea: on January 14, 1994, Barraza assisted in hiding the 1,500 pounds of marijuana at an apartment in Imperial Beach, California; on the same date, there were 17 duffle bags containing beige-taped packages in the bedroom of the apartment; and Barraza knew that the duffle bags contained marijuana.[3]
 
 
 5
 In exchange for the plea of guilty, the government agreed that "the Government will not charge defendant with any other drug offense in connection with the 1500 pounds of marijuana in this case." Plea Agreement (No. 94-1074-R), p 2. The parties also agreed that the written plea agreement was the full and complete agreement between the parties, section 2D1.1 of the Sentencing Guidelines was applicable to the offense,[4] Barraza's base offense level was 28, and Barraza was entitled to a two-level reduction for his minor role in the offense under section 3 of the Guidelines. Lastly, the government agreed to recommend a three-level reduction for acceptance of responsibility and the low-end of the resulting Guidelines range. On September 6, 1994, Barraza was sentenced to 70 months in custody, in accord with the government's recommendation.[5]
 
 
 6
 It is undisputed that Barraza and his attorney Ricardo Gonzalez at no time discussed with AUSA Sherri Walker any offense other than the possession of the 1,500 pounds of marijuana in Imperial Beach. Barraza did not choose to cooperate with the government and therefore never discussed any other drug-related activities with Walker.
 
 
 7
 Nevertheless, it is also undisputed that at the time Barraza's plea was entered, Barraza was one of many individuals being investigated in connection with a larger drug conspiracy.[6] In April 1994, U.S. Customs Special Agent Gary Phillips first learned from NTF agents that Barraza had been indicted with regard to the 1,500 pound marijuana seizure. Over the next several months, Phillips learned from confidential informants that Adolfo Hernandez (not Juan Chavez) was actually the leader of the organization and that Barraza was a member of the Hernandez organization.
 
 
 8
 At this point, Phillips' investigation refocused its efforts on the Hernandez--rather than the Chavez--smuggling organization. Phillips continued to receive information regarding Barraza. On June 30, 1994, another cooperating member of the Hernandez organization identified Barraza as one of the eleven members of the Hernandez smuggling organization.[7] Soon thereafter, AUSA Timothy Coughlin and Phillips met with Walker and informed her of the on-going investigation. Walker informed Coughlin and Phillips that Barraza's plea agreement only encompassed the January 14, 1994, 1,500 pound marijuana seizure.
 
 
 9
 Thus, when Barraza was sentenced on September 7, 1994, the government knew he was involved in the Hernandez organization and that it would indict him with regard to these activities. On the other hand, as of September 7, 1994, the investigation had not concluded. On September 16, Hernandez and Velasco discovered the two confidential informants. The following day, Hernandez and Velasco were taken into custody. On September 27, 1994, three indictments were returned against the Hernandez organization. Barraza was one of nineteen defendants indicted in connection with the Hernandez organization's drug trafficking activities.
 
 
 10
 Barraza was indicted on one count of conspiracy to import marijuana, one count of conspiracy to possess marijuana with intent to distribute, and 22 counts of importation of or possession with intent to distribute various quantities of marijuana. The first conspiracy count alleged that the events surrounding the 1,500 pound seizure of marijuana were overt acts in furtherance of the conspiracy. Barraza was not named, however, in the importation and possession counts related to the 1,500 pounds of marijuana.
 
 
 11
 Barraza filed pre-trial motions requesting dismissal of the indictment for prosecutorial misconduct, vindictive prosecution, preindictment delay, double jeopardy, and to compel specific performance of his prior plea agreement. These motions were based primarily on the government's failure to disclose the existence of the on-going investigation and the likelihood of an indictment in the near future, as well as on the government's agreement in paragraph two of the plea agreement "not to charge [Barraza] with any other drug offense in connection with the 1500 pounds of marijuana in this case."
 
 
 12
 At a March 31, 1995 hearing, the district court granted the motion to compel specific performance of the plea agreement in part, dismissing the two conspiracy counts because the conspiracies were charges connected with the 1,500 pounds of marijuana.[8] The district court, however, held that the remaining counts were not barred by the plea agreement for the following reasons.
 
 
 13
 First, the court found that on June 20, 1994, when the government entered into its plea agreement with Barraza, the government knew about Barraza's involvement in the Hernandez organization. On the other hand, because the government had conflicting information regarding Barraza, the information was insufficient to bring to the attention of Gonzalez, Barraza's attorney. The district court also found that the parties could not have reasonably interpreted paragraph two of the plea agreement as barring Barraza's prosecution for offenses committed before or after the 1,500 pound seizure. The court noted that blanket immunity had never been considered by the parties. Finally, the district court found that, because of the on-going nature of the investigation, the government was not required to warn Barraza at sentencing that he was the subject of its investigation.
 
 
 14
 Barraza pled guilty to counts two through eight, reserving the right to appeal the district court's denial of the motion compel specific performance of the plea agreement and dismiss the indictment. Barraza was sentenced to 84 months in custody to run concurrently with his 70 month sentence in the prior case. Barraza timely appeals.
 
 DISCUSSION
 I. STANDARD OF REVIEW
 
 15
 "The district court's interpretation of a plea agreement is a finding of fact and is reviewed for clear error, United States v. Read, 778 F.2d 1437, 1441 (9th Cir.1985), cert. denied, 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986), but its application of the legal principles is a question of law reviewed de novo, L.K. Comstock & Co. v. United Eng'r & Constructors Inc., 880 F.2d 219, 221 (9th Cir.1989)." United States v. Floyd, 1 F.3d 867, 869-70 (9th Cir.1993).
 
 
 16
 II. DID THE GOVERNMENT BREACH ITS PROMISE NOT TO CHARGE BARRAZA WITH ANY DRUG OFFENSE IN CONNECTION WITH THE 1,500 POUNDS OF MARIJUANA BY BRINGING THE INDICTMENT IN THE INSTANT CASE?
 
 
 17
 Barraza contends that the government violated the terms of the plea agreement by indicting him on substantive counts of possession and importation of various quantities of marijuana because these events comprised part of the same conspiracy as the 1,500 pound marijuana seizure in January 1994. We disagree.
 
 
 18
 " 'Plea agreements are contractual in nature and are measured by contract law standards.' United States v. Keller, 902 F.2d 1391, 1393 (9th Cir.1990). In construing an agreement, the court must determine what the defendant reasonably understood to be the terms of the agreement." United States v. De La Fuente, 8 F.3d 1333, 1338 (9th Cir.1993) (footnotes omitted).[9] If the agreement is ambiguous, the government must ordinarily bear the responsibility and the court must construe the agreement in favor of the defendant. Id. at 1338. It is the defendant's reasonable understanding at the time of the plea (rather than at sentencing) that controls. Id. Finally, " 'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' " United States v. Gerace, 997 F.2d 1293, 1294 (9th Cir.1993) (quoting Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971)).
 
 
 19
 Barraza argues that he and his attorney reasonably understood that paragraph two of his plea agreement would bar his prosecution for any drug offenses that were the subject of any on-going investigation. We reject this argument.
 
 
 20
 Paragraph two reads: "In exchange for defendant's plea, the Government will not charge defendant with any other drug offense in connection with the 1500 pounds of marijuana in this case." Barraza's attorney states in his declaration:
 
 
 21
 It was my intent in negotiating Mr. Barraza's plea in case no. 94-0074-02-R, and Mr. Barraza's understanding from our conversations that his plea would foreclose any future prosecution connected to the 1,500 pounds of marijuana he was charged with possessing with intent to distribute in that case, or relating to any larger investigation.
 
 
 22
 Gonzalez' belief that paragraph two foreclosed "future prosecution ... relating to any larger investigation" is simply not a reasonable understanding of paragraph two. See United States v. Sutton, 794 F.2d 1415, 1423 (9th Cir.1986) (In interpreting the plea agreement, "[t]he words 'conduct known to the government' cannot fairly be construed as 'conduct that reasonably could have been known.' "). Paragraph two nowhere mentions any larger investigation; had Gonzalez intended to prohibit the prosecution of Barraza on charges related to a larger investigation he should have requested that such language be inserted in the agreement.
 
 
 23
 Moreover, no other facts support Barraza's proposed interpretation. Gonzalez states that he was never informed by AUSA Walker of any pending investigations. Walker and Gonzalez never discussed future charges or the existence of an on-going investigation. Barraza at no time discussed his involvement in the larger drug conspiracy with the government. Cf. United States v. Krasn, 614 F.2d 1229, 1232-33 (9th Cir.1980) (promise to forego further prosecution of defendant on charges stemming from bribes or gratuities including alleged violation of the Internal Revenue laws did not prohibit subsequent prosecution for antitrust violation where negotiations between parties reflected that blanket immunity was never discussed). Thus, we hold that the district court did not clearly err in finding that the defendant did not reasonably understand paragraph two to address prosecution for other drug offenses that occurred on different dates, involved different quantities of drugs, and involved different individuals. See Gersace, 997 F.2d at 1294 (government kept its agreement to "stand silent at sentencing" where there was no evidence to suggest that the parties ever contemplated that the government would be forever bound to silence at future probation revocation hearings); see also United States v. Giorgi, 840 F.2d 1022, 1029 (1st Cir.1988) (defendant could not reasonably understand that plea agreement's provision prohibiting prosecution of "any criminal acts related to thefts or hijackings of vans" could affect his exposure on charges of arson and mail fraud).
 
 
 24
 Barraza nevertheless contends that, because the government failed to inform his attorney of the on-going investigation of the Hernandez organization, either during plea negotiations or at sentencing, Barraza was deprived of any benefit of entering his plea. See De La Fuente, 8 F.3d at 1340 (adopting defendant's interpretation of plea agreement where under interpretation urged by government, no consideration would have supported defendant's agreement to cooperate in the investigation).
 
 
 25
 First, we note that the government's failure to inform Barraza of the on-going investigation does not render his plea without benefit to him in the original case. Barraza was not charged with additional offenses relating to the 1,500 pounds of marijuana (such as importation of marijuana or conspiracy); moreover, the government recommended the low-end of the Guidelines range and agreed that he was entitled to a reduction for his minor role in the offense. Cf. id. (defendant could not have reasonably understood the terms of his plea agreement to offer nothing in exchange for his cooperation).
 
 
 26
 Second, whether or not the government breached its duty of good faith (and thus the plea agreement) by failing to inform Barraza that other charges were being considered in connection with the Hernandez drug trafficking organization or by failing to postpone the sentencing, this breach could not entitle Barraza to dismissal of the indictment in the instant case. Any such breach on the government's part cannot transform paragraph two of the agreement into a grant of immunity for offenses never even considered by the parties. We agree with the district court that Barraza must seek his remedy for any such failure to negotiate in good faith before the district court in case number 94-1074-R, for example, by moving to vacate his plea. See, e.g., United States v. Travis, 735 F.2d 1129, 1131 (9th Cir.1984) (vacating sentence and plea due to breach of government's promise).[10]
 
 
 27
 Finally, to the extent Barraza's argues that the government breached its duty of good faith and thereby violated his due process rights, he appears to be articulating a claim of prosecutorial misconduct. See Krasn, 614 F.2d at 1233 (failure to disclose antitrust investigation was not the type of prosecutorial misconduct which rises to the level of a due process violation).[11] We cannot address this claim. The district court denied Barraza's motion to dismiss based upon prosecutorial misconduct and Barraza waived his right to appeal all but the denial of the motion to compel specific performance of the plea agreement.
 
 
 28
 In sum, we conclude that the district court did not clearly err in finding that the plea agreement was not violated by Barraza's indictment on the substantive charges in this case. Regardless of whether the government was obligated to inform Barraza or the district court of the Hernandez investigation, such a claim could only lead to vacation of Barraza's plea in case number 94-1074-R. Barraza should address such a claim to the district court in that action.
 
 CONCLUSION
 
 29
 For the foregoing reasons, we AFFIRM Barraza's conviction.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In December 1993, the Narcotics Task Force ("NTF") began to investigate an apartment complex in Imperial Beach, California due to information provided by neighbors. This investigation led to a search of one of the apartments and the seizure of 1,500 pounds of marijuana contained in duffle bags. Barraza was arrested at the apartment during the search
 
 
 [2]
 Throughout the plea and sentencing, Barraza was represented by Ricardo Gonzalez. The United States was represented by AUSA Sherri Walker
 
 
 [3]
 In Barraza's interview with the probation officer, he admitted that a friend hired him to unload duffle bags of marijuana from a boat into an apartment in Imperial Beach. After the unloading, he and his two co-defendants were to be paid $500 each. Barraza made no mention of any other drug-related activities
 
 
 [4]
 This section governs the sentence for an offense involving the unlawful manufacturing, importing, exporting, or trafficking of drugs (including possession with intent to commit these offenses and conspiracy or attempt involving these offenses). USSG § 2D1.1
 
 
 [5]
 The probation department calculated the Guidelines range to be 100 to 125 months and recommended a sentence of 112 months
 
 
 [6]
 In late September 1993, Barraza's name appeared on a list found in a van containing 905 pounds of marijuana during the investigation of Juan Chavez. In October 1993, John Gomez, Mayra Rodriguez, and Rosemary Velasco were arrested and indicted in connection with the September seizure. In late March, after entering guilty pleas in connection with the 905 pound seizure, Rodriguez, Gomez, and Velasco provided information to the government concerning their co-conspirators that led the government to focus its investigation on Juan Chavez. In the March debriefings, Rodriguez and Velasco both named Barraza (among others) as being involved in the drug smuggling organization. Velasco specifically stated that Barraza was a friend of Gomez' and was arrested. Gomez, however, stated he knew Barraza but did not identify him as being involved in the Chavez organization
 
 
 [7]
 Barraza pled guilty on June 20, 1994
 
 
 [8]
 The court had denied Barraza's other motions at a prior hearing
 
 
 [9]
 As noted by De La Fuente, we sometimes state that it is the parties' reasonable understanding that controls the meaning of disputed terms. Id. at 1338 n. 7. This is practical equivalent to the standard as we phrase it above, given that ambiguities are interpreted in favor of the defendant's objectively reasonable understanding. Id
 
 
 [10]
 Similarly, Barraza's argument that the government breached its duty of good faith in failing to inform the sentencing court of information regarding Barraza's activities between the plea and sentencing simply has no bearing on his request for specific performance of paragraph two. As we hold above, the government has complied with paragraph two. If the government has breached its duty to negotiate Barraza's plea in good faith, this claim should be addressed to the district court that sentenced him so that it can consider any appropriate remedy. See United States v. Read, 778 F.2d 1437, 1441 (9th Cir.1986) (district court did not abuse its discretion in denying motion to withdraw plea where government was obligated to reveal to the sentencing judge pertinent factual information and plea agreement could not reasonably be interpreted as including a promise to withhold such information)
 
 
 [11]
 In Krasn, we held that the failure to disclose an antitrust investigation during plea negotiations regarding bribery charges was not prosecutorial misconduct. Krasn, 614 F.2d at 1234. We acknowledged that "[i]n certain cases, the duty of good faith would encompass an obligation to inform a defendant during plea bargain negotiations of other possible criminal charges which may be filed." Id. However, in Krasn, because the bribery and antitrust charges involved independent criminal transactions and because the antitrust investigation was only in its preliminary stages during the plea negotiations, the government was not obligated to reveal the antitrust investigation to the defendant. Id