UNITED STATES of America,
Plaintiff–Appellant,

v.

Susan DEBRECZENY, Defendant–
Appellee.

No. 02–2202.

United States Court of Appeals,
Sixth Circuit.

July 8, 2003.

Before BATCHELDER and ROGERS, Circuit Judges; and BARZILAY, Judge.*

## OPINION

BARZILAY, Circuit Judge.

The United States of America ("government") appeals the amount of restitution ordered by Robert Holmes Bell, Chief USDJ, ("sentencing judge") at a sentencing hearing held on August 29, 2002. The government challenges the restitution amount as being contrary to a written plea agreement entered into between Defendant–Appellee Susan Debreczeny and the government on May 24, 2002. In the plea agreement, Debreczeny agreed to "pay full restitution to the victim of the offense" including amounts not specified in the count to which she was pleading guilty. In particular. Debreczeny agreed that the

* The Honorable Judith M. Barzilay, United States Court of International Trade, sitting by designation.

restitution amount would "include all amounts wrongfully taken from the victim of the offense regardless of whether the statute of limitations has expired as to any particular theft." Beyond an understanding that the amount of restitution would "exceed[ ] $40.000" and that the amount would be subject to change as new facts came to light, the plea agreement did not contain an agreed dollar amount. After the plea agreement was entered and before the sentencing hearing was held, the government prepared a detailed presentence investigation report ("PR"), which recommended the amount of $64,982.36 as restitution. Debreczeny objected to this recommendation. Consequently, the sentencing judge ordered Debreczeny to pay $47,500, $17.482.36 less than the recommendation. In addition to restitution, Debreczeny's sentence included a five-month term of imprisonment in halfway house and a three-year term of supervised release. The sole issue raised in this appeal is the amount of restitution ordered.[1] Because the sentencing judge did not clearly err in construing the ambiguous terms of the parties' plea agreement in favor of Debreczeny, we affirm in part, and we remand in part for further consideration of the $375 amount taken from Judge Gadola in 1995.

## I.

Debreczeny was the long-time secretary of Paul V. Gadola, USDJ, working for him in his private practice and later when he was appointed to the bench in 1989. Debreczeny's guilty plea involved one count of theft of personal property from a federal building pursuant to 18 U.S.C. §§ 7(3) and 661. The personal property in question was a check in the amount of $2,500 drawn in September 2001 on Judge Gado-

la's private brokerage account. Judge Gadola kept his checkbook in his desk drawer at work. The subsequent investigation revealed twenty-six different incidents of theft in the period from April 1999 to September 2001, totaling $47,500. The investigation further revealed that Debreczeny took an additional $17,107.36 from a dormant law firm account of Judge Gadola between March 1990 and October 1992 and another $375 in 1995. No other thefts are at issue. Debreczeny admitted to all the thefts, yet urges that the earlier amounts be excluded from the restitution amount.

The method Debreczeny used in perpetuating the thefts was the same: she made the checks payable to herself and endorsed them with Judge Gadola's signature stamp. She concealed her act by using checks at the end of the checkbook and hiding the relevant pages of monthly account statements from Judge Gadola, who attributed changes in the balance to market fluctuations. There is no indication that Judge Gadola knew of the 1999–2001 thefts (or the 1995 theft) prior to finding out about the September 2001 check, at which time he fired Debreczeny and contacted authorities.

Judge Gadola, however, had known of the 1990–92 thefts. He confronted Debreczeny with those thefts sometime in late 1992 or early 1993. Debreczeny asked the Judge not to press criminal charges, fire her, or tell her husband. Judge Gadola accepted Debreczeny's entreaties on the condition that she not repeat her actions and repay him for what she took. Debreczeny never repaid these amounts, and Judge Gadola by his own account never pressed her for repayment. The Judge continued to employ Debreczeny and the two were in close daily contact for years, often commuting together to work from

---

**1.** The inclusion of the $17,482.36 would have no impact on the sentencing guidelines as the total sum of $64,982.36 falls short of the cutoff for graduating the offense.

Flint to Detroit. In addition, she received salary raises and recommendations from him.

In excluding any thefts outside of the 1999–2001 period from the restitution order, the sentencing judge emphasized Judge Gadola's differing attitudes towards the earlier and later thefts. (JA 47–49.) According to the sentencing judge, Judge Gadola's behavior "indicate[d] that there had been a forgiveness or a ratification" of Debreczeny's earlier actions. Judge Gadola made "[n]o effort ... to take wages by garnishment or to take [a] written note or loan or anything." On the contrary. Judge Gadola kept Debreczeny in a "confidential" and "trust" relationship and "in a position where she could commit additional thefts." The sentencing judge suggested that a "pattern" that would justify the inclusion of the earlier thefts was easier to establish if it involved an unknowing and innocent victim. The sentencing judge also looked to the $40,000 amount specified in the plea agreement. In the judge's words, "if I look at this restitution order, exceeding $40,000. Not 50 or 60, but 40. And I find $47,500 is the [brokerage account] checks that are the subject matter here. I find that bears similarity." The sentencing judge finally concluded that "[i]t's a close call, but the Court believes the benefit should go to the defendant in a close call like this." The judge did not reference any authority in support of his findings.

## II.

To support the contention that the earlier stolen amounts should have been included in the restitution order, the government focuses on the language of the plea agreement. (Appellant's Br. at 10–12.) Specifically, the government asserts that the terms of the plea agreement were specific and unambiguous in that Debreczeny agreed to pay "full restitution" including "all amounts wrongfully taken from the victim." The government further asserts that the sentencing judge erred in characterizing Judge Gadola's failure to pursue repayment of the 1990–92 amounts as "ratification" because a victim of a crime has no power to ratify criminal conduct. The government also urges that the sentencing judge omitted the 1995 theft of $375 from the restitution order "apparently through oversight." (*Id.* at 8.)

Debreczeny contends that uncontroverted facts contained in the PR, viewed as a whole. support the decision of the sentencing judge to exclude the earlier thefts from the restitution order. (Appellee's Br. at 11–14.) Specifically, Debreczeny argues that the sentencing judge implicitly decided, based on Judge Gadola's differing attitudes towards the thefts, that the earlier thefts were not relevant conduct under U.S.S.G. § 1B1.3 to justify their inclusion in the present charge.[2] Debreczeny further contends that the terms of the plea agreement are non-specific and ambiguous by virtue of not containing a set dollar amount. Debreczeny rejects the interpretation that the sentencing judge's use of the term "ratification" at sentencing means a formal "ratification of the criminal activity" by a victim.

---

**2.** In the PR, the government considered factors recommended in Application Note 9(B) of U.S.S.G. § 1B1.3 in finding that the 1990–92 and the 1999–2001 thefts should be grouped together as relevant conduct for restitution purposes. In particular, the PR found that the offenses were "sufficiently connected or related to each other" as the victim was the same and the manner by which the thefts were committed was "strikingly similar." (JA 99–100.) At sentencing, Debreczeny also argued that because of the "separation in time" the 1990–92 thefts should constitute a distinct offense not to be considered in the sentencing of the present offense. (JA 46.)

The parties are in accord that the standard of review applicable in this case is abuse of discretion. (Appellant's Br. at 10; Appellee's Br. at 10); *see also United States v. Guardino,* 972 F.2d 682, 686 (6th Cir.1992) (after reviewing *de novo* whether a restitution order is permitted under law, an appellate court reviews the amount ordered under the abuse of discretion standard). When the abuse of discretion standard applies, the lower court's decision "cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *McBee v. Bomar,* 296 F.2d 235, 237 (6th Cir.1961). "An abuse of discretion exists when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Paschal v. Flagstar Bank,* 297 F.3d 431, 434 (6th Cir.2002). *cert. denied,* — U.S. —, 123 S.Ct. 1287, 154 L.Ed.2d 1089 (2003) (quotation omitted). Because the issue in this case ultimately reduces to a factual dispute regarding what specific sum of money is referred to in the plea agreement, we review whether the district court's factual finding as to that sum was clearly erroneous.

The power of a district court to enter a restitution order stems from the Victim and Witness Protection Act ("VWPA") of 1982, relevant provisions codified at 18 U.S.C. §§ 3663,3664. "[I]n situations such as this, the appellate court should assume that the trial court ordered restitution under the VWPA." *Guardino,* 972 F.2d at 686 (citing to *United States v. Padgett,* 892 F.2d 445, 448 (6th Cir.1989), which noted that the VWPA, by its extensive terms, superseded any prior statute governing restitution orders). The VWPA provides that "[t]he court may ... order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." § 3663(a)(3).

Moreover, once a district court accepts a plea agreement where parties agreed on "a specific sentence or sentencing range," the district court is bound by the parties' plea agreement. FED. R.CRIM. P. 11(c)(1)(C) (2003).[3] That is, once the court accepts such a plea agreement, it cannot impose a sentence greater or less severe than what is in the plea agreement. *See United States v. Fernandez,* 960 F.2d 771 (9th Cir.1992) (citations omitted). If the terms of the plea agreement are equivocal, however, the district court has discretion to interpret its terms. "The content of a plea agreement and what the parties agreed to is a question of fact for the district court that is reviewed for clear error." *United*

---

**3.** At the time of sentencing in this case, the 2002 amendments to R. 11 were not yet in effect. However, the old R. 11(e)(1)(C) (2002) contains similar language. The amendments were enacted for the express purpose of distinguishing between types of plea agreements. For example, a plea agreement that merely proposes a sentence is not binding on the sentencing court. FED. R.CRIM. P. 11(c)(1)(B) (2003). The parties here do not specify under which category this plea agreement should be considered. The government merely argues that once the sentencing judge accepted the parties' plea agreement, it was bound by its terms—which argument implies that the plea agreement is of type (C). There is also no argument made in this appeal that any ambiguity in its terms converts the plea agreement to a type (B) plea agreement. *Cf. United States v. Veri,* 108 F.3d 1311, 1314 (10th Cir. 1997). In any event, because this court holds that the restitution provision of the plea agreement is ambiguous and the sentencing judge did not abuse his discretion in construing its terms in favor of the defendant, the type of the plea agreement matters little. If this plea agreement had been of type (B), the sentencing judge would still have had discretion in accepting or rejecting its terms.

*States v. Lukse*, 286 F.3d 906, 909 (6th Cir.2002) (citation omitted).

In the plea agreement, Debreczeny agreed to pay "all amounts wrongfully taken from the victim," and the parties further agreed that this amount would "exceed[ ] $40,000." subject to modification as new facts came to light. The parties did not further specify a set dollar amount. While the government urges that "all amounts wrongfully taken" should include the 1990–92 and the 1995 thefts, Debreczeny claims that those amounts should be excluded. The two interpretations of the restitution provision in the plea agreement are inconsistent. A plea agreement is a contract, and the interpretation of its terms is therefore governed by contract-law principles. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir.), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986) (citation omitted). Because "a plea bargain is a contract, [its] terms ... necessarily must be interpreted in light of the parties' reasonable expectations." *United States v. Mooney*, 654 F.2d 482, 486 (7th Cir.1981) (citations omitted). In addition, a plea agreement is "ambiguous if it is capable of more than one reasonable interpretation." *United States v. Gebbie*, 294 F.3d 540, 551 (3d Cir.2002) (quotation omitted).

Accordingly, the first question is whether Debreczeny's interpretation of the restitution provision as excluding the 1990–92 thefts is reasonable. The facts of this case support the contention that Debreczeny could have formed a reasonable belief at the time of signing the plea agreement that she no longer had to repay Judge Gadola for the earlier amounts and that Judge Gadola no longer wished to be compensated for those amounts. Judge Gadola and Debreczeny came to an understanding about repayment immediately after the initial thefts. However. Judge Gadola continued to employ Debreczeny as his secretary for almost nine years after that understanding, and from all indications their relationship was amicable and friendly. During this period. Judge Gadola never asked Debreczeny for repayment. Neither did he ask her to sign any debt instrument. There is no question that Judge Gadola showed ample generosity towards Debreczeny who in turn exploited such generosity and trust. Her conduct is regrettable and should not be condoned. The fact remains, however, that this behavior of Judge Gadola could have engendered a reasonable expectation on Debreczeny's part that he no longer expected repayment from her. Thus, in the plea agreement Debreczeny could have reasonably intended that "all amounts wrongfully taken from the victim" did not include the 1990–92 thefts. In interpreting the plea agreement, the sentencing judge focused on Debreczeny's understanding and interpretation of Judge Gadola's differing attitudes towards the earlier and later thefts and his intervening behavior.[4]

On the other hand, "all amounts wrongfully taken" could be interpreted to include

---

4. The government argues that the sentencing judge erred in characterizing Judge Gadola's conduct as "ratification" because a victim of a crime cannot ratify criminal conduct. *See United States v. Ross*, 131 F.3d 970, 982 (11th Cir.1997), *cert. denied*, 525 U.S. 913, 119 S.Ct. 258, 142 L.Ed.2d 212 (1998) ("Ratification or condonation is not a defense for past criminal behavior.") (citation omitted). It is true that "[r]estitution or attempted restitution does not nullify or excuse a previous crime." *Sav-itt v. United States*, 59 F.2d 541, 544 (3d Cir.1932). That is, the perpetrator of the crime cannot ratify her past criminal activity by paying restitution to her victim. Therefore, Debreczeny cannot ratify her conduct by paying restitution to Judge Gadola for the thefts. The fact that victim ratification does not make criminal conduct innocent does not determine, however, the intended meaning of the words in the plea agreement.

the earlier amounts which, without a doubt, were unauthorized and in that sense "wrongfully taken" from Judge Gadola. In addition, Debreczeny waived the statute of limitations with respect to restitution. Since the two competing interpretations by Debreczeny and the government are both reasonable regarding the restitution amount, this court must conclude that the plea agreement in question here is ambiguous in its terms.[5] *See United States v. Harvey,* 791 F.2d 294, 300 (4th Cir.1986) (observing that "whether a written agreement is ambiguous or unambiguous on its face should ordinarily be decided by the courts as a matter of law").

When faced with an ambiguous plea agreement, courts consider extrinsic evidence or the facts surrounding the plea bargain in construing what parties reasonably understood to be the terms of the plea agreement. *See Gebbie,* 294 F.3d at 551. As explored above, the facts surrounding this case, far from clarifying it, add to the ambiguity relating to the parties' agreement about restitution. The extent of the thefts was not discovered until after the PR was prepared (with both Judge Gadola's and Debreczeny's help). It is true that the PR recommends a specific dollar amount of restitution. However, since the PR constitutes a mere recommendation, the sentencing judge had discretion to reject or accept its particular points. Debreczeny did not endorse the PR. On the contrary, she objected to the PR's recommendations in a proper and

timely manner. The PR was prepared after the plea agreement was signed and, therefore, serves little to clarify the parties' intent and expectations at the time of the signing of the agreement.[6] *Cf. United States v. Fuente,* 8 F.3d 1333, 1338 n. 8 (9th Cir.1993) (proposing in the context of a plea agreement that "under general principles of contract law, it would be bizarre to look to the time of final performance rather than to the time of contract formation in construing the parties' intent").

In addition to considering extrinsic evidence, courts look at the document "as a whole" to resolve any ambiguity of its provisions. *United States v. Clark,* 218 F.3d 1092, 1096 (9th Cir.), *cert. denied,* 531 U.S. 1057, 121 S.Ct. 668, 148 L.Ed.2d 569 (2000). Thus, we may attempt to clarify what "all amounts" means by considering that the parties also agreed that the restitution amount would "exceed[ ] $40.000." The government may have wished to guarantee a minimum restitution amount, or the parties may have meant the $40,000 to be a ballpark figure. Each interpretation is equally plausible. The sentencing judge interpreted the $40,000 figure to be an estimate of the agreed restitution amount when excluding the earlier amounts of theft from the order. In any event, the "exceeding $40,000" provision does not explain what "all amounts" means and further compounds the ambiguity.

Courts construe ambiguity in plea agreements generally in favor of the de-

---

**5.** Since this case involves interpretation of a plea agreement with respect to the 1990–92 thefts, this court need not consider whether they are "relevant conduct" under U.S.S.G. § 1B1.3.

**6.** An argument could be made (although not made here) that, by subjecting the dollar amount of restitution to subsequent modification upon discovery of new facts, the parties agreed to incorporate the PR into the plea

agreement. The argument may have had merit, had Debreczeny not objected to the PR's recommendation before sentencing. If she had not objected, Debreczeny's silence may have meant acquiescence to the PR's recommendation. On the other hand, whether the sentencing judge should have accepted the PR's recommendation is the precise point of contention here.

fendant and against the government. *See Gebbie*, 294 F.3d at 551–52 (citing various appellate courts' decisions): *United States v. Randolph*, 230 F.3d 243, 248 (6th Cir. 2000) ("It is true, of course, that any ambiguities in the language of a plea agreement must be construed against the government"). In addition, the government "ordinarily must bear responsibility for any lack of clarity." *E.g., Fuente*, 8 F.3d at 1338 (quotations omitted). The government is held to a higher standard because of its role as the drafter of the plea agreement and because it is seen as possessing the upper hand and expertise in the bargaining process. Unlike ordinary contracts and because of their unique nature, plea agreements must comply with the requirements of due process. *See, e.g., United States v. Herrera*, 928 F.2d 769, 773 (6th Cir.1991). The sentencing judge here noted that the case was "a close call" and gave the benefit to the defendant. On balance and in the light of the deference owed to the district court's factual determinations, this court cannot say that the sentencing judge's restitution order constitutes clear error. The sentencing judge properly construed the ambiguity in the plea agreement in favor of Debreczeny.

The government urges that the sentencing judge did not consider the 1995 theft of $375 "apparently through oversight." (Appellant's Br. at 8.) The 1995 theft must necessarily be considered in a different context because Judge Gadola did not find out about the 1995 theft until after the prosecution of the present case. The 1995 theft is not part of the ambiguity of the plea agreement in the same manner the 1990–92 amounts are. It is impossible to determine on this record what the sentencing judge thought of the 1995 theft since he made no mention of it at sentencing. Even though we are mindful of the district court's caseload and time constraints, we see no choice but to remand to the district court for further consideration of this amount.

## III.

Because this court finds that the plea agreement at issue here is ambiguous regarding the amount of restitution and because the sentencing judge did not err in construing the ambiguity in favor of Debreczeny, the sentencing judge's decision to exclude the 1990–92 thefts from the restitution order is **affirmed** and, further, the case is **remanded** for reconsideration of the 1995 theft amount.

BATCHELDER, Circuit Judge, Dissenting.

Today's majority opinion is a testament to the unfortunate principle that no good deed goes unpunished. Because the plea agreement is not ambiguous, and because the majority's reliance on the actions of the victim to reduce the amount owed in restitution is contrary to the black letter law of this circuit. I respectfully dissent.

As an initial matter, the majority fails to recognize that the district court's inquiry should have been guided not only by the Victim and Witness Protection Act of 1982 ("VWPA"), codified at 18 U.S.C. §§ 3663 & 3664, but also by the Mandatory Victims Restitution Act ("MVRA"), codified at 18 U.S.C. §§ 3663A & 3664. The MVRA is intended to apply to the extent constitutionally possible to sentencing in cases in which the defendant is convicted on or after April 24, 1996–the effective date of the act. *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, § 211, 110 Stat. 1214, 1241 (1996). Because restitution is punishment under both the VWPA and the MVRA, the retroactive application of the MVRA to acts which occurred prior to April 24, 1996, would violate the Ex Post Facto Clause.

*United States v. Schulte,* 264 F.3d 656, 662 (6th Cir.2001). Accordingly, those thefts which were committed after April 24, 1996, are governed by the MVRA, while the thefts which occurred prior to the MVRA's effective date are governed by the VWPA.

The MVRA states that courts "shall order" full restitution "without consideration of the economic circumstances of the defendant." 18 U.S.C. §§ 3663A(a)(1) & 3664(f)(1)(A). In the instant case, the MVRA applies to the $47,500 wrongfully taken from Judge Gadola after the effective date of the act. The restitution of the $17,482.36 which forms the core of this dispute is governed by VWPA, which states that "[t]he court may ... order restitution in any criminal case to the extent agreed to by the parties in the plea agreement." 18 U.S.C. § 3663(a)(3).

Applying the VWPA, the majority argues that the plea agreement is ambiguous because it is susceptible to more than one reasonable interpretation. Slip-op at 8. The majority spends little time with the actual language of the plea agreement, perhaps because that language is so clearly not susceptible to multiple *reasonable* interpretations. The plea agreement states in relevant part that

> [t]he Defendant also understands that she will be required to pay *full restitution* to the victim of the offense. The Defendant agrees that the restitution order is not restricted to the amounts alleged in the count to which she is pleading guilty and *shall include all amounts wrongfully taken from the victim of the offense regardless of whether the statute of limitations has expired as to any particular theft.* The parties currently believe that the applicable amount of restitution *exceeds* $40,000.00, but recognize and agree that *this amount could change* based on facts

that come to the attention of the parties prior to sentencing.

(J.A. 16 (emphasis added).)

This language does not support the conclusion that restitution should only cover *some* of the ill-gotten gains, or that the amount is limited to somewhere in the "ballpark" of $40,000. Nor can it be said that the agreement does not clearly express the intent that the settlement would reach the older thefts at issue. The plea agreement expressly includes amounts that would otherwise be barred by the statute of limitations, which for violations of 18 U.S.C. § 661 is five years. *See* 18 U.S.C. § 3282. But it is only the amounts *excluded* from the restitution order that arose from thefts which occurred more than five years prior to the criminal information in this case. Therefore, to give the plea agreement the reading suggested by the majority is to make the language concerning the statute of limitations meaningless. When read as a whole, and when read in such a way as to give meaning to all the terms in the plea agreement, the language is abundantly clear that "full restitution" for "all amounts wrongfully taken"–including without limitation restitution for the "old" thefts—is required.

The majority finds, however, that "all amounts wrongfully taken" is somehow ambiguous, because the "behavior of Judge Gadola could have engendered a reasonable expectation on Debreczeny's part that he no longer expected repayment from her." Thus, the majority asserts that "Debreczeny could have reasonably intended that 'all amounts wrongfully taken from the victim' did not include the 1990–92 thefts." Slip-op at 8–9. Because this interpretation is contrary to law-and indeed to common sense-it cannot be "reasonable." First, as a matter of common sense, whether or not the victim expects repayment says nothing as to whether the funds

were "wrongfully taken." A party may choose not to force a thief to repay money stolen, but that does not transform the wrongful nature of the theft. Furthermore, because restitution is punishment, the Supreme Court has declared that "[t]he victim has no control over the amount of restitution." *Kelly v. Robinson,* 479 U.S. 36, 52, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). This court, noting that "the law will not tolerate privately negotiated end runs around the criminal justice system," has further held that a victim may not release a criminal wrongdoer from part or all of their restitution obligation. *United States v. Bearden,* 274 F.3d 1031, 1041 (6th Cir.2001)(internal quotation omitted).

In apparent response to this binding authority, the majority suggests that "[t]he fact that victim ratification does not make criminal conduct innocent does not determine, however, the intended meaning of the words in the plea agreement." Slip-op at 706 n. 4. To accept this interpretation is to say that that which cannot be done expressly may be done by implication. Indeed, it is to find that it is permissible for one party to do an "end run[ ] around the criminal justice system" by basing her interpretation of a plea agreement upon an impermissible and at best inferred discharge. Such a holding would make meaningless the principle announced in *Bearden* and *Robinson.*

The law does not permit a victim to ratify a debt and thereby to circumvent the state's punitive interest in restitution. It therefore follows that a defendant cannot use inferred ratification as extrinsic evidence to alter a plea agreement, and reach the same result. Because I believe that the district court clearly erred in calculating the restitution by failing to require Ms. Debreczeny to pay the full resti-

tution to which she agreed, I respectfully dissent.