**Leon H. POGUE, Petitioner,**

v.

**John M. RATELLE, Respondent.**

**No. 98–CV–922 K(LAB).**

United States District Court,
S.D. California.

July 30, 1999.

Leon Heinz Pogue, San Diego, CA, pro se.

Attorney General, State of Cal., San Diego, CA, for Respondent.

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DENYING MOTION TO PRODUCE PERTINENT RECORDS**

KEEP, District Judge.

On May 15, 1998, Petitioner, a state prisoner proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner filed supplemental briefing on June 30, 1998, after

receiving permission to do so from the Magistrate Judge Larry A. Burns.

On May 4, 1999, Magistrate Judge Larry A. Burns issued a Report and Recommendation ("R & R") denying the petition. Magistrate Judge Burns submitted the R & R to this court pursuant to 28 U.S.C. § 636(b)(1). In the R & R, Magistrate Judge Burns ordered that the parties may file any objections to the R & R by June 7, 1999, and allowed any reply to be filed by June 21, 1999. On May 14, 1999, Respondent John M. Ratelle, filed objections. On May 20, 1999, Petitioner Leon H. Pogue filed objections which also contained references to Ratelle's objections. Respondent did not file a reply.

According to 28 U.S.C. § 636(b)(1)(C), "a judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

After a review of the Magistrate Judge's R & R and Petitioner's arguments, the court, hereby, adopts the R & R en toto pursuant to Rule 8 of the rules governing proceedings in the United States district courts under Title 28 U.S.C. § 2254.

## I. BACKGROUND

The procedural history, as succinctly set forth by Judge Burns, is not objected to by either party.

The following history, therefore, is largely taken from the R & R.

On September 4, 1996, Petitioner was sentenced to life in prison by the San Diego County Superior Court after a jury found him guilty of auto theft and possession of drug paraphernalia. Petitioner was sentenced under California's "Three Strikes" law, California Penal Code, §§ 667(b)–(*l*) and 1170.12, because he had previously been convicted of three robberies. Although Petitioner seeks habeas relief in relation to the life sentence he received in the 1996 auto theft and drug

paraphernalia case, his prior robbery convictions were used to enhance his sentence for the 1996 auto theft. Accordingly, the procedural history relating to Petitioner's prior robbery convictions is set forth in detail below.

On July 22, 1991, Petitioner was charged with committing a knife-point robbery in San Diego ("the San Diego case"). San Diego County Deputy Public Defender Cathlyne Coyne was appointed to represent him. On August 1, 1991, Petitioner pled guilty to the robbery charge pursuant to a plea agreement in the San Diego County Superior Court (hereafter the "San Diego plea agreement"). *See* First Amended Habeas Corpus Petition ("FAHCP") at 2. According to the change of plea form, in exchange for Petitioner pleading guilty to the San Diego robbery, the district attorney promised to ask for no more than six years custody and further agreed that "no additional robberies [would] be filed." *See* FAHCP, Exhibits A and B at 3–4.

As it turned out, the language in the change of plea form overstated the parties' actual agreement on whether additional robbery charges could be brought against Petitioner. The terms of the agreement were clarified, however, during the change of plea colloquy that preceded Petitioner's guilty plea. Referring to the change of plea form, the judge taking Petitioner's guilty plea recited the terms of the agreement as follows:

> What that means is you'd be agreeing you'd get that six-year term. In return for that agreement, the rest of this complaint, which could have added more years, will be dismissed. *Also no additional robberies will be filed against you which are known or could become known as a result of property found in your car at the time of your arrest.*

FAHCP, Exhibit B at 3–4 (emphasis added).

The judge then asked: "Now, Mr. Pogue, is all this that we've just talked about a correct statement of the agreement in your

case?" Petitioner replied, "Yes, Sir, it is." *Id.* at 4. The judge then accepted Petitioner's guilty plea. Petitioner was subsequently sentenced to six years in state prison on the San Diego robbery charge.

Two weeks later, on August 15, 1991, the district attorney charged Petitioner with committing another robbery in El Cajon ("the El Cajon case"). San Diego County Deputy Public Defender Michael Berberich was appointed to represent Petitioner in the El Cajon case. During a criminal settlement conference, Mr. Berberich told the court he was familiar with the San Diego plea agreement and that he had discussed the agreement with Petitioner and with Ms. Coyne, Petitioner's lawyer in the San Diego case. Mr. Berberich did not believe the agreement foreclosed the district attorney from charging Petitioner with the El Cajon robbery.[1] Moreover, Berberich disclosed that Coyne had met with Petitioner after he was charged in the El Cajon case and "explained to him what was going on, what the results were, what his options were, etc., and she advised him that, notwithstanding any miscommunication as to what was encompassed by [the San Diego robbery] change of plea, it would not be in [Petitioner's] interest to withdraw that change of plea in San Diego." Lodgment No. 1 at 191. Accordingly, on Berberich's advice, Petitioner pled guilty on September 11, 1991, to the El Cajon robbery charge and was sentenced to six years in custody, to run concurrently with the sentence in the San Diego case.

On October 10, 1991, the district attorney charged Petitioner with a third robbery that had been committed in North San Diego County ("the Vista case"). Petitioner was represented by San Diego County Public Defender William Stone. On November 11, 1991, Petitioner pled guilty to the Vista robbery charge pursuant to a plea agreement that provided he

would receive only one additional year in custody, "subordinate" to the concurrent sentences he was serving in the San Diego and El Cajon cases. Lodgment No. 2 at 266. Petitioner acknowledged during his change of plea colloquy that he was satisfied with Mr. Stone's efforts in his behalf and that he was pleading guilty to obtain the benefit of the plea agreement. *Id.* at 267. On January 17, 1992, Petitioner was sentenced to one year in custody in the Vista case, to be served consecutive to his previously-imposed six year sentence. *Id.* at 248.

Petitioner did not directly appeal any of the robbery cases and the judgments became final.

Petitioner was released from prison on the robbery cases in 1995 and thereafter was arrested and charged with the felony crimes of auto theft and possession of drug paraphernalia. He was convicted following a jury trial. At sentencing, the district attorney sought to enhance Petitioner's sentence under the Three Strikes law based on his three prior robbery convictions. Petitioner argued that the Three Strikes enhancement should not apply to him because the district attorney violated the San Diego plea agreement by charging him subsequently with two additional robberies (in the El Cajon and Vista cases). After conducting a hearing on the matter, the trial judge rejected Petitioner's argument and sentenced him to life in prison under the Three Strikes law.

Petitioner appealed to the California Fourth District Court of Appeals, renewing his argument that the trial court should not have considered the two, subsequent robbery convictions. The Court of Appeals unanimously affirmed the judgment on January 29, 1998, in an unpublished opinion. Lodgment No. 13. Petitioner then filed a petition for writ of

---

1. As Mr. Berberich explained to the court:
   "[H]aving now seen that transcript [the transcript of Petitioner's change of plea colloquy in the San Diego robbery case], quite frankly, I'm making no argument at this point in time that this case should have

been encompassed by that San Diego change of plea. I believe that if the entire record is looked at, it would undoubtedly prove that was not the case."
Lodgment No. 1 at 194.

habeas corpus on the same grounds with the state Court of Appeals, which was denied on February 20, 1998. *See* Lodgment No. 12 and Un-numbered (third) Exhibit to FAHCP at 2. On February 19, 1998, Petitioner filed a petition for writ of habeas corpus with the California Superior Court, again contending that the trial court erred in relying on the prior robbery convictions. *See* Un-numbered (third) Exhibit to FAHCP at 2. The Superior Court denied the petition on March 12, 1998. *Id.* Petitioner next filed a petition for review with the California Supreme Court, which summarily denied the petition on April 22, 1998. Lodgment Nos. 17 & 18.

As noted above, Petitioner filed the present petition on May 15, 1998.

## II. *DISCUSSION*

The issues raised by this writ are: 1) whether this court has jurisdiction to review Petitioner's challenges to the validity of his 1991 "Vista" and "El Cajon" robbery convictions; 2) whether petitioner's indictment and conviction for the "Vista" and "El Cajon" robberies violates the terms of the plea agreement he entered into after the 1991 "San Diego" robbery. In the R & R, Judge Burns found that under Ninth Circuit and Supreme Court law, the court has jurisdiction to hear Petitioner's challenges to the validity of the 1991 "Vista" and "El Cajon" convictions which were used to enhance his 1996 car theft sentence. Having determined that jurisdiction existed pursuant to 28 U.S.C. § 2254, Judge Burns then turned to the merits of Petitioner's writ. Judge Burns found that under clearly established federal law the prosecutors must fulfill the promises made in return for defendant's guilty plea pursuant to the Due Process Clause of the Constitution. After examining the scope of the plea agreement, Judge Burns concluded that the government had not breached the plea agreement. As a result, Judge Burns held that the 1991 convictions were valid. The 1991 Convictions, therefore, were properly used as previous convictions under the California Three Strikes law, California Penal Code §§ 667(b)–(*l*) and

1170.12. The 1996 sentence, therefore, is valid.

Both parties object to Judge Burns' findings. Respondent claims that this court lacks jurisdiction to review the merits of Petitioner's claim. Petitioner claims that the 1991 "San Diego" plea agreement was breached by the district attorney as to the "Vista" and "El Cajon" robberies, and that as a result his sentence for the 1996 car theft is invalid. This court will address the objections in turn.

### A. Respondent's Objections

### 1. Habeas Jurisdiction

Respondent objects to Judge Burn's finding that this court has jurisdiction to address the Petitioner's arguments. For the reason stated below, this court agrees with Judge Burn's holding and adopts the R & R as to jurisdiction.

In the R & R, Judge Burns held that the court had jurisdiction to review the 1991 state convictions that were used to enhance Petitioner's 1996 sentence. In reaching this conclusion Judge Burns reviewed the Supreme Court's decision in *Custis v. United States*, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994). Judge Burns held that *Custis* limited a defendant's ability to attack prior convictions only in a federal sentencing proceeding. *See* R & R at 5. On habeas review, Judge Burns held, the court may still review the constitutionality of the prior convictions which were used to enhance a sentence. *See id.*

In the objections, Respondent challenges Judge Burn's holding by arguing that *Custis*, and related appellate decision, divest this court of jurisdiction to hear habeas challenges to earlier state convictions. Under Respondent's reading of *Custis*, the court would only have jurisdiction to review prior convictions where Petitioner was totally denied counsel at the time of the prior conviction. *See* Objections at 4.

The issue of whether the Supreme Court's holding in *Custis* divests a federal district court of habeas jurisdiction over collateral challenges to the constitutionality of state convictions which are used to enhance a state conviction is presently before this court. Prior to the *Custis* decision, the Ninth Circuit held that a Petitioner may challenge prior state convictions that are used to enhance a federal sentence that is being challenged in the habeas petition. *See Feldman v. Perrill,* 902 F.2d 1445, 1449 (9th Cir.1990). The *Custis* decision raised some questions as to the scope of review available under *Feldman. See Allen v. State of Oregon,* 153 F.3d 1046, 1049 n. 3 (9th Cir.1998) (noting contradictory language in Ninth Circuit cases regarding the scope of *Custis* ). As noted in the R & R, however, two post-*Custis* Ninth Circuit cases construe the scope of *Custis* and clearly state that prior convictions may be challenged on habeas review. In *Brock v. Weston,* 31 F.3d 887 (9th Cir. 1994), the Ninth Circuit stated that the *Custis* decision "does not disturb the 'uniform appellate case law' holding that, on habeas, federal courts may review the constitutionality of prior convictions relied upon for sentencing enhancement." *Id.* at 890 (citing *Custis,* 114 S.Ct. at 1746 n. 7). In *U.S. v. Price,* 51 F.3d 175 (9th Cir. 1995), the Ninth Circuit again stated that "defendants who wish to challenge the validity of prior convictions to be used for sentence enhancement have the *constitutional* right to do so through habeas corpus . . . ." *Id.* at 177. As noted in the R & R, when viewed collectively these cases establish a basis for habeas jurisdiction to hear collateral challenges to prior state convictions that are used to enhance a sentence under California law.

In what is essentially an expansion of the Answer filed with Judge Burns, Respondent argues that several state and federal cases should be interpreted as divesting the district court of jurisdiction to hear collateral challenges. Respondent's arguments are not well taken for the reasons indicated below.

Respondent argues that several Ninth Circuit cases should be read as precluding habeas jurisdiction over Petitioner's arguments. Respondent relies upon *Contreras v. Schiltgen,* 151 F.3d 906 (9th Cir.1998) as support for the argument that a prior state conviction may not be challenged in a habeas proceeding. Respondent does not note, however, that the court in *Contreras* explicitly stated that "[o]ur decision is limited to the deportation context and does not necessarily bear on the validity of our holding in *Brock v. Weston,* in which we permitted collateral review of an expired state conviction in § 2254 habeas challenge to state civil confinement predicated thereon." *Id.* at 908. Thus, the *Contreras* decision is inapposite. Indeed, the case before the court is a § 2254 habeas challenge to a prior state conviction and is therefore governed by the holding in *Brock. See id.*

Respondent also relies on *Clawson v. U.S.,* 52 F.3d 806 (9th Cir.1995), *cert. denied,* 516 U.S. 897, 116 S.Ct. 252, 133 L.Ed.2d 177 (1995). *Clawson* reaffirms *Custis* by stating that a defendant may not challenge his prior state convictions in a *federal sentencing hearing. See id.* at 808–09. Respondent does not explain why *Clawson* should be read as applying to § 2254 habeas review of a state sentence which is enhanced by earlier state convictions. As such, *Clawson* is unhelpful.

Additionally, Respondent urges this court to follow the Eighth Circuit decision from *Partee v. Hopkins,* 30 F.3d 1011 (8th Cir.1994), *cert. denied,* 513 U.S. 1166, 115 S.Ct. 1135, 130 L.Ed.2d 1096 (1995), where the court read *Custis* as precluding § 2254 habeas review of prior state criminal convictions. The *Partee* decision, however, has not been adopted by other circuits and has been criticized for it's lack of analysis. *See Young v. Vaughn,* 83 F.3d 72, 77 (3rd Cir.1996), *cert. denied,* 519 U.S. 944, 117 S.Ct. 333, 136 L.Ed.2d 245 (1996). As the decision in *Partee* has not been followed by the Ninth Circuit, this court must follow the clear directives contained in the *Brock* and *Price* cases. This court will not,

therefore, adopt the Eighth Circuit's decision.

Finally, Respondent argues that a recent California Supreme Court decision, *Garcia v. Superior Court,* 14 Cal.4th 953, 59 Cal.Rptr.2d 858, 928 P.2d 572 (1997) precludes a challenge to prior convictions on federal habeas review. Respondent overstates the holding of *Garcia.* The court in *Garcia* held that a defendant could not challenge the validity of prior convictions in a state court criminal trial. *See id.* at 956, 963, 59 Cal.Rptr.2d 858, 928 P.2d 572. *Garcia* made no holding as to the federal habeas jurisdiction over challenges to prior convictions. As such, *Garcia* is inapposite.

For the reasons stated above, this court adopts the R & R holding as to jurisdiction.

### 2. Respondent's Objections to Footnote 5 of the R & R

Respondent also objects to footnote 5 of the R & R.

Footnote 5 reads:

The Answer filed by the Attorney General in this case was inadequate. Respondent's Answer, consisting of six pages of argument, asserts only the Attorney General's jurisdictional argument and does not address any aspect of the merits of Petitioner's claim. In addition, the Answer presents only the most superficial analysis of the jurisdictional question and is notable for its failure to mention *Brock v. Weston,* 31 F.3d 887, which is adverse to Respondent's jurisdictional argument. *See* R & R at 6.

In fact, Respondent's answer did not address the merits of Petitioner's arguments. Additionally, Respondent's argument regarding jurisdiction failed to mention the central Ninth Circuit case regarding the scope of *Custis, Brock v. Weston.* Regrettably, this court finds that the footnote is accurate. It is inexcusable to ignore clearly relevant Ninth Circuit law. Accordingly, the footnote is adopted.

In sum, this court has jurisdiction to review Petitioner's challenges to the 1991 state convictions which were used to enhance his sentence for the 1995 conviction which gave rise to the present § 2254 petition.

### B. Petitioner's Objections

In the well written and thorough R & R, Judge Burns reviewed Petitioner's claim that "his 1996 sentence under California's Three Strikes law was illegally imposed because two of his alleged 'strikes' were unconstitutionally obtained in violation of the San Diego plea agreement" that was entered into in 1991. R & R at ——– ——. Judge Burns held that pursuant to *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) federal constitutional law was relevant to the resolution of Petitioner's claims because the terms of a plea agreement "must be fulfilled as a matter of due process under the Fourteenth Amendment to the United States Constitution." *See* R & R at ——.

Judge Burns then examined Petitioner's understanding of the terms of the plea agreement at the time the guilty plea was entered. *See id.* (Citing *United States v. De la Fuente,* 8 F.3d 1333, 1337 & n. 7 (9th Cir.1993)). Judge Burns stated that "[w]hatever Petitioner's prior understanding of the plea agreement may have been, 'it is the defendant's understanding *at the time of the plea* that controls.' " *See* R & R at —— (citing *De la Fuente,* 8 F.3d at 1337 n. 8 (italics in original)).

At his plea hearing Petitioner was told that under the plea agreement "no additional robberies will be filed against you which are known or could become known *as a result of property found in your car at the time of your arrest.*" FAHCP, Exhibit B at 3–4 (emphasis added). Petitioner then stated that the above statement was an accurate representation of the terms of the plea agreement. *See id.* at 4. Judge Burns concluded that the terms of the plea agreement prohibited further charges that arose from evidence found in

Petitioner's car at the time of his arrest. *See* R & R at ——. After a review of the record, Judge Burns concluded that Petitioner's subsequent robbery charges were based on fingerprint evidence which was unrelated to any property found in Petitioner's car at the time of his prior arrest. *See id.* Accordingly, the terms of the plea agreement were not violated and Petitioner's 1991 robbery convictions were valid. *See id.*

In his objections to the R & R, Petitioner does not dispute that fingerprint evidence led to the disputed robbery charges. Additionally, Petitioner does not dispute that at the time of sentencing he understood that the terms of his plea agreement prohibited further charges arising from evidence found in his car at the time of his earlier arrest. In the objections Petitioner simply argues that the vague terms of the written plea agreement should control over the more precise terms that were delineated at the plea hearing. As such, Petitioner argues that the government was prohibited from charging him with any crime that was known at the time of his first robbery arrest. *See* Objections at 2–3.

This court does not find Petitioner's argument persuasive. As Judge Burns noted in the R & R, the understanding of the plea agreement at the time that Petitioner entered the guilty plea is controlling. *See De la Fuente*, 8 F.3d at 1337 n. 8. The clear statement made by the trial judge at the plea hearing only prohibited the government from charging Petitioner with robberies that were or became known as a result of property found in Petitioner's car at the time of his arrest. *See* FAHCP, Exhibit B at 3–4. Petitioner agrees that his subsequent arrests did not arise from property found in his car at the time of his first arrest. As Petitioner states "[a]ll parties agree that the El Cajon and Vista robberies was (sic) 'based upon fingerprint evidence'" Opposition at 5.

The subsequent robbery charges, therefore, did not arise from any property found in Petitioner's car at the time of his first arrest. As such, the clear terms of the plea agreement, as stated at the plea hearing, were not violated. Petitioner's 1991 robbery convictions, therefore, were properly used to enhance his 1996 sentence. Accordingly, Judge Burns' R & R holding regarding the plea agreement is adopted.

In his objections, Petitioner appears to make a claim that his counsel in the "El Cajon" and "Vista" robbery cases was ineffective because they failed to assert the plea agreement as a ground for dismissal of those charges. *See* Objections at 5–6. As Judge Burns noted in the R & R, the lawyers who represented Petitioner correctly interpreted the terms of the plea agreement and therefore cannot be said to have rendered ineffective assistance. *See* R & R at ——.

Further, an examination of Petitioner's claim reveals that counsel can in no way be said to have been ineffective. In *Strickland v. Washington*, 466 U.S. 668, 686–87, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set out a two-pronged test for claims of ineffective assistance of counsel. Under the *Strickland* test, a Petitioner must show that: (1) his counsel's representation fell below an objective standard of reasonableness; (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See id.* To satisfy the first prong of the test Petitioner must show that counsel's performance fell "outside the wide range of professional competence." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Satisfaction of the second prong requires a showing that counsel's errors were so serious they deprived the Petitioner "of a fair trial, a trial whose result is reliable." *Id.*

Petitioner fails to meet either prong of the *Strickland* test. First, Petitioner's lawyers in the "El Cajon" and "Vista" cases interpreted the terms of the plea agreement correctly. The failure to raise an argument that no court has reviewed favorably that is a strategic decision is virtually unchallengeable. *See Strickland,*

466 U.S. at 690, 104 S.Ct. 2052. Thus, the first prong of *Strickland* has not been met. If Petitioner makes an insufficient showing on one prong of the test, the court need not even ascertain if the other prong is met. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

Additionally, Petitioner fails to make any assertion as to why the result in his case would have been different had counsel behaved differently. There is no indication on the record that an attempt to read the plea agreement broadly would have been at all successful. Accordingly, the second prong of *Strickland* is not met. *See id.*

In sum, none of Petitioner's arguments have merit. The Petitioner, therefore, must be denied. The R & R is adopted en toto.

## III. *CONCLUSION*

Based on the foregoing analysis, the court, hereby, **ADOPTS** Magistrate Judge Burns's R & R en toto and **DENIES** Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS

BURNS, United States Magistrate Judge.

On May 15, 1998, Petitioner Leon H. Pogue, a state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus pursuant to Title 28 of the United States Code section 2254. Petitioner requested and received permission to submit supplemental briefing, which he did on June 30, 1998. Although Petitioner labeled his supplemental briefing "First Amended Habeas Corpus Petition," that title is a misnomer because Petitioner intends for the supplemental document to be read in conjunction with his original habeas Petition. Respondent filed an Answer to the Petition on July 20, 1998, and Petitioner filed a Traverse on September 9, 1998. After fully considering all of the moving and opposing papers filed, it is recommended that the Petition be **DENIED** for the reasons outlined below.

## PROCEDURAL HISTORY

On September 4, 1996, Petitioner was sentenced to life in prison by the San Diego County Superior Court after a jury found him guilty of auto theft and possession of drug paraphernalia. Petitioner was sentenced under California's "Three Strikes" law, California Penal Code, §§ 667(b)–(i) and 1170.12, because he had previously been convicted of three robberies. Although Petitioner seeks habeas relief in relation to the life sentence he received in the 1996 auto theft and drug paraphernalia case, his prior robbery convictions were used to enhance his sentence and therefore are at the nub of his claim for relief. Accordingly, the procedural history relating to Petitioner's prior robbery convictions is set forth in detail below.

On July 22, 1991, Petitioner was charged with committing a knife-point robbery in San Diego ("the San Diego case"). San Diego County Deputy Public Defender Cathlyne Coyne was appointed to represent him. On August 1, 1991, Petitioner pled guilty to the robbery charge pursuant to a plea agreement in the San Diego County Superior Court (hereafter the "San Diego plea agreement"). First Amended Habeas Corpus Petition ("FAHCP") at 2. According to the change of plea form, in exchange for Petitioner pleading guilty to the San Diego robbery, the district attorney promised to ask for no more than six years custody and further agreed that "no additional robberies [would] be filed." FAHCP, Exhibits A and B at 3–4.

As it turned out, the language in the change of plea form overstated the parties' actual agreement on whether additional robbery charges could be brought against Petitioner. The terms of the agreement were clarified, however, during the change of plea colloquy that preceded Petitioner's guilty plea. Referring to the change of plea form, the judge taking Petitioner's

guilty plea recited the terms of the agreement as follows:

> What that means is you'd be agreeing you'd get that six-year term. In return for that agreement, the rest of this complaint, which could have added more years, will be dismissed. *Also no additional robberies will be filed against you which are known or could become known as a result of property found in your car at the time of your arrest.*

FAHCP, Exhibit B at 3–4 (emphasis added).

After informing Petitioner of the foregoing, the judge then asked: "Now, Mr. Pogue, is all this that we've just talked about a correct statement of the agreement in your case?" Petitioner replied, "Yes, Sir, it is." *Id.* at 4. The judge then accepted Petitioner's guilty plea. Petitioner was subsequently sentenced to six years in state prison on the San Diego robbery charge.

Two weeks later, on August 15, 1991, the district attorney charged Petitioner with committing another robbery in El Cajon ("the El Cajon case"). San Diego County Deputy Public Defender Michael Berberich was appointed to represent Petitioner in the El Cajon case. During a criminal settlement conference, Mr. Berberich told the court he was familiar with the San Diego plea agreement and that he had discussed the agreement with Petitioner and with Ms. Coyne, Petitioner's lawyer in the San Diego case. Mr. Berberich did not believe the agreement foreclosed the district attorney from charging Petitioner with the El Cajon robbery.[1] Moreover, Berberich disclosed that Coyne had met with Petitioner after he was charged in the El Cajon case and "explained to him what was going on, what the results were, what his options were, etc., and she advised him

that, notwithstanding any miscommunication as to what was encompassed by [the San Diego robbery] change of plea, it would not be in [Petitioner's] interest to withdraw that change of plea in San Diego." Lodgment No. 1 at 191. Accordingly, on Berberich's advice, Petitioner pled guilty on September 11, 1991, to the El Cajon robbery charge and was sentenced to six years in custody, to run concurrently with the sentence in the San Diego case.

On October 10, 1991, the district attorney charged Petitioner with a third robbery that had been committed in North San Diego County ("the Vista case"). Petitioner was represented by San Diego County Public Defender William Stone. On November 11, 1991, Petitioner pled guilty to the Vista robbery charge pursuant to a plea agreement that provided he would receive only one additional year in custody, "subordinate" to the concurrent sentences he was serving in the San Diego and El Cajon cases. Lodgment No. 2 at 266. Petitioner acknowledged during his change of plea colloquy that he was satisfied with Mr. Stone's efforts in his behalf and that he was pleading guilty to obtain the benefit of the plea agreement.[2] *Id.* at 267. On January 17, 1992, Petitioner was sentenced to one year in custody in the Vista case, to be served consecutive to his previously-imposed six year sentence. *Id.* at 248.

Petitioner did not directly appeal any of the robbery cases and the judgments became final.

Petitioner was released from prison on the robbery cases in 1995 and thereafter was arrested and charged with the felony crimes of auto theft and possession of drug paraphernalia. He was convicted following a jury trial. At sentencing, the district

---

**1.** As Mr. Berberich explained to the court:
"[H]aving now seen that transcript [the transcript of Petitioner's change of plea colloquy in the San Diego robbery case], quite frankly, I'm making no argument at this point in time that this case should have been encompassed by that San Diego change of plea. I believe that if the entire

record is looked at, it would undoubtedly prove that was not the case."
Lodgment No. 1 at 194.

**2.** Petitioner also acknowledged that by pleading guilty, he was waiving his right to appeal. Lodgment No. 2 at 266.

attorney sought to enhance Petitioner's sentence under the Three Strikes law based on his three prior robbery convictions. Petitioner argued that the Three Strikes enhancement should not apply to him because the district attorney violated the San Diego plea agreement by charging him subsequently with two additional robberies (in the El Cajon and Vista cases). After conducting a hearing on the matter, the trial judge rejected Petitioner's argument and sentenced him to life in prison under the Three Strikes law.

Petitioner appealed to the California Fourth District Court of Appeals, renewing his argument that the trial court should not have considered the two, subsequent robbery convictions. The Court of Appeals unanimously affirmed the judgment on January 29, 1998, in an unpublished opinion. Lodgment No. 13. Petitioner then filed a petition for writ of habeas corpus on the same grounds with the state Court of Appeals, which was denied on February 20, 1998. *See* Lodgment No. 12 and Un-numbered (third) Exhibit to FAHCP at 2. On February 19, 1998, Petitioner filed a petition for writ of habeas corpus with the California Superior Court, again contending that the trial court erred in relying on the prior robbery convictions. *See* Un-numbered (third) Exhibit to FAHCP at 2. The Superior Court denied the petition on March 12, 1998. *Id.* Petitioner next filed a petition for review with the California Supreme Court, which summarily denied the petition on April 22, 1998. Lodgment Nos. 17 & 18.

Petitioner now renews his argument regarding the robbery convictions in this Court. Succinctly stated, he alleges that the District Attorney breached the San Diego plea agreement by charging him

with the El Cajon and Vista robberies. He contends his right to due process under the United States Constitution was violated when, in 1996, the state court relied on the two subsequent robbery convictions to enhance his sentence in the auto theft and narcotics paraphernalia case.[3] Petitioner requests this Court to strike the 1991 El Cajon and Vista robbery convictions, vacate the 1996 sentence which relied on those convictions as prior "strikes," and remand his case for resentencing. Petition at 10.

In his Answer to the Petition, Respondent challenges the jurisdiction of this Court to consider Petitioner's arguments. Respondent argues that under *Custis v. United States,* 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), this Court lacks subject matter jurisdiction to consider Petitioner's attack on his 1991 robbery convictions. As Respondent reads *Custis,* the only basis for a habeas petitioner to collaterally attack a prior expired conviction[4] is if the petitioner was *totally* denied counsel at the time the prior conviction was obtained, i.e., "*Gideon* error." *See Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Answer at 7. Respondent maintains that no federal habeas corpus jurisdiction exists, and the petition should be dismissed with prejudice. Answer at 9–10.

## DISCUSSION

The Court first addresses Respondent's jurisdictional argument.

### A. Subject Matter Jurisdiction

In *Custis v. United States,* the Supreme Court held that with the exception of con-

---

**3.** In both his original and supplemental petitions, Petitioner attempts to divide his single due process claim into six, essentially duplicative, subclaims. The subclaims include Petitioner's contentions that the prosecutor committed misconduct by breaching the plea agreement, the sentencing court committed judicial misconduct by not enforcing the agreement, and his attorneys were incompetent for not seeking to enforce the agreement.

The Court has carefully reviewed Petitioner's submissions and finds that for all purposes he has raised a single due process claim alleging breach of the plea agreement.

**4.** An "expired" conviction means that the prisoner has fully served the sentence for that conviction and is no longer in custody for that conviction.

victions obtained in violation of the right to counsel, a defendant *in a federal sentencing proceeding* has no constitutional right to collaterally attack the validity of prior convictions used to enhance his sentence. 511 U.S. at 495–97, 114 S.Ct. 1732. Respondent argues that *Custis* precludes federal habeas review of Pogue's 1991 state court robbery convictions, but *Custis* does support the argument. While *Custis* clearly restricts a defendant's ability to mount a collateral attack of a prior conviction at *a federal sentencing proceeding*, the Ninth Circuit has held "it does not disturb the 'uniform appellate case law' holding that, on habeas, federal courts may review the constitutionality of prior convictions relied upon for sentencing enhancement." *Brock v. Weston*, 31 F.3d 887, 890 (9th Cir.1994) (internal citation omitted); *see also Custis*, 511 U.S. at 497, 114 S.Ct. 1732 (recognizing that defendant who was still in custody for purposes of his state convictions at the time of his federal sentencing could attack his state sentences through federal habeas review); *United States v. Price*, 51 F.3d 175, 177 (9th Cir. 1995) ("defendants who wish to challenge the validity of prior convictions to be used for sentence enhancement have the constitutional right to do so only through habeas corpus"). Respondent therefore misconstrues *Custis* as authority to preclude Petitioner's habeas claim.[5]

█ Although Petitioner's sentences on the 1991 robbery convictions have completely expired, in the Ninth Circuit he may still challenge those convictions for their effect on his subsequent sentence. *Brock*, 31 F.3d at 890; *Feldman v. Perrill*, 902 F.2d 1445, 1449 (9th Cir.1990) (petition should be construed as a challenge to petitioner's current confinement as predicated upon his prior conviction). Liberally construed in accordance with *Brock* and *Feldman*, Pogue's petition challenges his two [6] 1991 robbery convictions in the context of an attack on his 1996 auto theft and narcotics paraphernalia sentence. *Brock*, 31 F.3d at 890. As Pogue is currently incarcerated for the 1996 offenses, he fulfills § 2254's custody requirement.

## B. Merits

### 1. Scope of Review

This Court is limited to deciding whether Petitioner's 1996 sentence, as enhanced by two of his 1991 robbery convictions, was entered in violation the federal constitution or laws. 28 U.S.C. §§ 2241(c)(3), 2254(a). A federal court may not grant relief on any claim which was adjudicated on the merits in a state court proceeding, unless the adjudication resulted in either (1) "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the Unites States;" or (2) "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Additionally, this Court must presume correct any state court factual determination not rebutted by clear and convincing evidence. *Id.* at § 2254(e)(1).

### 2. Alleged Breach of San Diego Plea Agreement

█ Petitioner maintains that his 1996 sentence under California's Three Strikes law was illegally imposed because two of his alleged "strikes" were unconstitutionally obtained in violation of the San Diego plea agreement. As an initial matter, the Court agrees with Petitioner that the federal constitutional law relevant to the reso-

---

**5.** The Answer filed by the Attorney General in this case was inadequate. Respondent's Answer, consisting of six pages of argument, asserts only the Attorney General's jurisdictional argument and does not address any aspect of the merits of Petitioner's claim. In addition, the Answer presents only the most superficial analysis of the jurisdictional ques-

tion and is notable for its failure to mention *Brock v. Weston*, 31 F.3d 887, which is adverse to Respondent's jurisdictional argument.

**6.** Pogue acknowledges that his 1991 robbery conviction in the San Diego case was properly counted as a strike. FAHCP at 1, n. 1.

lution of this issue was clearly established by the United States Supreme Court's decision in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In *Santobello*, the Supreme Court ruled that promises made by prosecutors in consideration for a defendant's guilty plea must be fulfilled as a matter of due process under the Fourteenth Amendment to the United States Constitution. 404 U.S. at 262, 92 S.Ct. 495. *See also Mabry v. Johnson*, 467 U.S. 504, 509–510, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) (breach of plea agreement implicates the constitutional guarantee of due process). Accordingly, if Pogue establishes by clear and convincing evidence that two of his prior robbery convictions resulted from a breached plea agreement, he is entitled to federal habeas relief.[7]

On the question of whether the District Attorney breached the San Diego plea agreement, the California Court of Appeals found:

> From Pogue's own statement, made prior to entering the [August 1991 robbery guilty] plea, it is clear that the agreement was that the prosecution would not file any further robberies which became known or could have become known to the People from the property found in Pogue's vehicle at the time of arrest.
>
> \*  \*  \*  \*  \*  \*
>
> The [trial] court found there was no evidence to support Pogue's claim that the El Cajon and Vista robbery convictions could have been known, or in fact were based, on evidence found in the car following his arrest in the San Diego case. The El Cajon and Vista robberies were charged based on fingerprint evidence unrelated to the property found in Pogue's car. Pogue's belated and self-serving statement that the knife found in car [sic] was the same knife used in all three robberies is not sufficient evidence for this court to find the charging

of the subsequent robberies violated the San Diego plea agreement.

Lodgment 13 at 10–11.

Petitioner challenges the Court of Appeals' interpretation of the San Diego plea agreement and also disputes that Court's conclusion that the El Cajon and Vista robbery charges did not stem from evidence recovered in the San Diego case. He maintains that the expansive statement in the plea form ("no additional robberies to be filed") trumps the trial judge's more limited oral recitation of the terms of the agreement. Pet. at 4. As a fall back, he argues that even if the trial court's limitation on the plea agreement is given effect, the agreement nonetheless prevented the District Attorney from charging him with the El Cajon and Vista robberies because those crimes were known at the time of his plea in the San Diego case. Pet. at 5. Finally, contrary to the finding of the Court of Appeals, Petitioner argues that he was linked to the El Cajon and Vista robberies by a knife that was used in all three robberies and was found in his car after his arrest in the San Diego case. Pet. at 6–7.

In assessing an alleged breach of a plea agreement, a court must first determine the defendant's reasonable understanding of the terms of the agreement. *United States v. De la Fuente*, 8 F.3d 1333, 1337 & n. 7 (9th Cir.1993) (interpreting *Mabry v. Johnson*, 467 U.S. at 507–511, 104 S.Ct. 2543). Here, the Court of Appeals found that Petitioner's "own statements" at the time he entered his plea established that he understood that the District Attorney was only restricted from filing additional robberies based on property found in his car. The record supports the Court of Appeals' conclusion. Whatever Petitioner's prior understanding of the plea agreement may have been, "it is the defendant's understanding *at the time of the plea* that controls." *De la Fuente*, 8 F.3d at 1337 n. 8 (italics in original) (citing

---

7. Consistent with § 2254(d), such a showing would necessarily mean that the state court

made an unreasonable determination of the facts in light of the evidence presented.

cases); *cf. Blackledge v. Allison*, 431 U.S. 63, 73–74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (representations of defendant, as well as findings made by judge accepting plea, carry a strong presumption of truthfulness). Thus, Petitioner's assertion that statements in the written plea form prevail over his oral acknowledgment of the terms of the plea agreement at the time of the plea is wrong as matter of law.

Accepting that the terms of the plea agreement were as articulated at the time of the plea, Petitioner next argues that the agreement barred the District Attorney from charging him with additional "known" robberies. But the agreement did not say that. The agreement said that the District Attorney could not charge Petitioner with additional robberies that were known or could become known *from property found in his car at the time of his arrest* in the San Diego case. Petitioner's clipped interpretation of the agreement, emphasizing only the word "known" and disregarding the qualifier "as a result of property found in your car at the time of your arrest," is neither a grammatically correct nor a fair construction of the plea agreement.[8] Therefore, the Court of Appeals did not unreasonably interpret the plea agreement.

Finally, the record evidence also supports the Court of Appeals conclusion that Petitioner was not charged with the El Cajon and Vista robberies "as a result of" evidence collected in connection with the San Diego case. Petitioner presented no evidence in the state court proceedings, and none in his federal petition, that the El Cajon and Vista robbery charges resulted from the discovery of incriminating items found in his car. To the contrary, the record establishes that he was charged with the El Cajon and Vista robberies based on fingerprint evidence that linked him to both crimes. Petitioner maintains that a knife which was used in all three robberies was found in his car, but the record establishes that Petitioner's fingerprints, not the knife, is what linked him to the El Cajon and Vista robberies.

In sum, this Court has carefully reviewed the record evidence submitted in support of, and in opposition to, the petition in this case, including: (1) Petitioner's change of plea forms in the three 1991 robbery cases (Lodgment No. 1 at 103–104; 198–199; and Lodgment No. 2 at 246–247); (2) the transcript of Petitioner's guilty plea in the San Diego robbery case (Lodgment No. 1 at 105–111); (3) the transcript of Petitioner's 1996 state sentencing hearing, which included an evidentiary hearing into Petitioner's allegation that the District Attorney breached the San Diego plea agreement (Lodgment No. 5 at 262–296); and (4) the written evidence presented to the sentencing court that Petitioner's connection to the El Cajon and Vista robberies was established independently of evidence found in his car (Lodgment No. 1 at 117–125; 133–140). From this independent review, this Court concludes that the Court of Appeals' interpretation of the San Diego plea agreement and its finding that there was no breach of the agreement was neither an unreasonable application of *Santobello* nor an unreasonable determination of the facts in light of the evidence presented.

## CONCLUSION AND RECOMMENDATION

After a thorough review of the record in this matter and based on the foregoing analysis, it is recommended that the Petition for Writ of Habeas Corpus be *DE-NIED.* This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

**IT IS HEREBY ORDERED** that no later than *June 7, 1999,* any party may file

---

8. All three lawyers who represented Petitioner in the 1991 robbery cases realized this point and, accordingly, did not attempt to argue that the San Diego plea agreement had been breached. Because trial counsel in the robbery cases correctly interpreted the plea agreement, Petitioner's attack on their competency is unfounded.

and serve written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed and served no later than *June 21, 1999.* The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

**IT IS SO ORDERED.**

May 4, 1999.